ROSS SYSTEMS, PLAINTIFF-APPELLANT AND CROSS-RE-
SPONDENT, v. LINDEN DARI-DELITE, INC., *ETC.*, AND
JOHN SAMILA, DEFENDANTS-RESPONDENTS AND
CROSS-APPELLANTS.

Argued April 11, 1961—Decided June 30, 1961.

*Mr. David N. Ravin* argued the cause for the plaintiff-appellant and cross-respondent (*Messrs. Ravin & Ravin,* attorneys; *Mr. Leo Kahn,* on the brief).

*Mr. William F. Mullen* argued the cause for the defendants-respondents and cross-appellants (*Mr. Daniel L. Golden,* attorney; *Mr. William F. Mullen,* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This is an appeal and cross-appeal from a judgment of the Appellate Division affirming denials by the Chancery Division of the plaintiff's claim for specific performance of a franchise agreement and the defendants' counterclaim for charges paid in excess of the contract price. The Chancery Division, on its own motion, adjudicated the cancellation of a lease which the court held was integrally related to the franchise agreement; and the Appellate Division remanded that part of the cause for further judicial inquiry as to the terms upon which the cancellation should be based. Since there was a dissent in the Appellate Division, the appeals are here as of right. *R. R.* 1:2–1(b).

The facts necessary to understand the issues raised on this appeal are set forth in the opinion of the Appellate Division, 62 *N. J. Super.* 439 (1960), at *pages* 442 through 445, as follows:

"Plaintiff is a partnership consisting of three brothers named Levin residing in Illinois. It is in the business of 'franchising and selling' equipment to retail ice-cream stores to be operated under the trade name 'Dari-Delite.' In 1952 Charles R. Dann was appointed plaintiff's exclusive agent in New Jersey. Plaintiff brings

this action to enforce compliance by the defendant Linden Dari-Delite, Inc. ('Linden' hereinafter) with a franchise agreement dated April 12, 1954, under which Linden was authorized by plaintiff to sell Dari-Delite ice cream from a location at 446 Wood Avenue in the City of Linden. Dann was designated a 'Third Party' in the agreement, with the right to supervise compliance with its terms by Linden and to 'take over' the contract in the place of Linden upon default by the latter. By an amended complaint plaintiff also seeks reformation of the agreement so that it will be declared intended and effective for a term of ten years. Dann is not an individual party to this action. An understanding of the defense and counterclaim, and of the disposition of the matter by the trial court, from which both sides have appealed, requires detailing the somewhat complicated factual background of this controversy.

On March 8, 1954 Dari-Delite of New Jersey, Inc., a corporation apparently owned and controlled by Dann, entered into a lease as tenant for certain store premises at the Wood Avenue, Linden, location above referred to for a term of ten years. The property was subleased April 2, 1954 to Linden at the same rent as the principal lease and for the balance of the same term. At the times of all the transactions thus far mentioned the proprietary interest in Linden was vested in Dann and one Winfield R. Scott. However, no ice-cream business was actually conducted by Linden at the Wood Avenue location until the defendant Samila came into the picture, as about to be related.

On March 31, 1955 Samila purchased the stock of Linden from Dann and Scott for the sum of $10,500, intending to conduct the Dari-Delite ice-cream business under the franchise and lease aforementioned through the instrumentality of the Linden corporation. He did so until May 21, 1958, when Linden, through counsel, notified plaintiff by letter of its termination of the franchise agreement and advised it to remove its personal property from the premises. It appears from the complaint and pretrial order that defendants' basic grievance against plaintiff was that Dann, who as plaintiff's agent had the function under the agreement of designating local suppliers of the ice-cream mix which Linden was required to use, had made a side-agreement with the supplier for a rebate or commission to Dann which caused the price to Linden to be inflated correspondingly and beyond the contemplation of the agreement. The only payments to or on behalf of plaintiff stipulated in the agreement were 25¢ per gallon of mix and 3¢ per gallon as dues to the National Dari-Delite Association. But by Dann's side-agreement with Farmland Dairies, made February 15, 1957, Farmland paid him $500 in cash and agreed to pay him a commission of $1 per can (ten gallons) and 25¢ per can 'to be used to help increase the output of cans of mix in the Dari-Delite Stores of New Jersey.' This extra $1.25 per can (or $1—the proofs are not clear) was added to the basic price and included in the gross price for which Farm-

land billed Linden. Linden claimed to have overpaid about $1,000 for ice-cream mix to Farmland because of the Dann commissions.

It was Linden's position in its answer that this conduct by Dann entitled it to terminate the agreement, and the counterclaim sought recovery of the excess payments thus exacted from it.

At the conclusion of the testimony of the defendant Samila at the trial, the trial judge, on his own motion, raised the question, not theretofore made a point of issue by defendants, as to whether plaintiff had not violated the franchise agreement in the material respect of failure to provide ice cream of an 'exclusive' formula. He finally held that there was such a breach by plaintiff and that the plaintiff was therefore not entitled to enforce the agreement, thus eliminating the issue of reformation. He intimated the view that the evidence would have warranted reformation if the agreement were to be held enforceable. The court dismissed the matter of the excessive payments by defendant on the basis that they were made knowingly, and, therefore, voluntarily. It went one step further, however, holding that since the franchise agreement was terminated the lease from Dari-Delite of New Jersey, Inc. to the corporate defendant must also be terminated, as the 'franchise and the sublease are part and parcel of the same transaction and are inseparable.' Plaintiff was given leave to join Dari-Delite of New Jersey, Inc. as a party to effectuate a judgment to the stated effect in respect to the lease."

The Appellate Division held that (1) the franchise agreement should be reformed to accord with the parties' intent that the agreement and the related lease run for a concurrent period of ten years; (2) the franchise agreement did not require plaintiff to provide defendant with an "exclusive mix" and therefore plaintiff's failure to provide such a mix was not a breach of the agreement; (3) the overcharges resulting from the commission agreement between Dann and Farmland had the effect of increasing the price which the parties to the franchise agreement contemplated defendants would pay for its mix and therefore constituted a material breach of the franchise agreement; (4) defendants could not recover on the counterclaim the amount of past overcharges because they had knowingly and voluntarily made the payments; (5) the defendants waived any right deriving from the past overcharges to declare a forfeiture of the franchise agreement by voluntarily making the overpayments

for more than a year after learning of their existence; (6) an admission by the plaintiff that it could not guarantee Dann would desist in the future from collecting the commissions constituted an anticipatory breach of the franchise agreement which gave the defendants the right to terminate and deprived the plaintiff of the right to specific performance; and (7) cancellation of the lease should be preceded by a judicial inquiry into whether the cancellation should be subject to a refund to defendant Samila of a fair proportion of the $10,500 paid for the stock of Linden Dari-Delite, Inc.

We agree with the holdings of the Appellate Division designated (1) through (3) above for the reasons expressed in its opinion.

This brings us to the question raised by the Appellate Division's holding, designated (4) above, that the defendants cannot recover on their counterclaim for past overpayments because the overpayments were knowingly and voluntarily made. It is well settled that money knowingly and voluntarily paid cannot be recovered on the ground there was no liability to pay in the first instance. *e. g.*, *Meier v. Nightingale*, 134 *N. J. L.* 275 (*E. & A.* 1946); *Shoemaker & Co. v. Board of Health*, 83 *N. J. L.* 425 (*Sup. Ct.* 1912). The record in the present case discloses that defendant Samila knew of Dann's side-agreement for commissions with Farmland at about the time it was made. Before the commission arrangement went into effect, Samila participated in a meeting of Dari-Delite operators at St. Petersburg, Florida. At that meeting, Samila and the other dealers complained to Dann about the prospective exaction of added commissions. After learning of the commission arrangement and registering his protest to Dann, Samila paid the commissions as part of the price of mix for about a year. We agree with the trial court and the Appellate Division that on these facts the payments were made knowingly. But whether they were made voluntarily is another question.

■ Defendants argue that the payments were involuntary because made under duress, or more specifically, a species thereof known as "business compulsion." Payments are made under duress when they are induced by the wrongful pressure of the payee and the payor has no immediate and adequate remedy in the courts to resist them. *Miller v. Eisele,* 111 *N. J. L.* 268, at *p.* 281 (*E. & A.* 1933); Annotations 75 *A. L. R.* 658 (1931), 79 *A. L. R.* 655 (1932) (collecting cases). See Dalzell, "Duress By Economic Pressure I and II," 20 *N. C. L. Rev.* 237, 342 (1942); Dawson, "Economic Duress—An Essay in Perspective," 45 *Mich. L. Rev.* 253 (1947).

The facts of this case compel the conclusion that by means of his side-agreement with the supplier, Farmland, Dann wrongfully exerted pressure upon the defendants, and that but for this pressure defendants would not have made the payments. Under the franchise agreement, the plaintiff promised to supply defendants with ice cream mix at $2.80 per ten gallons above the market price. Dann was aware of the precise terms of the agreement; indeed, he was a party to it. The effect of his commission arrangement with Farmland was to increase beyond the contract price the amount the defendants had to pay for their mix. Accordingly, the commission arrangement was wrongful. That Dann's wrongful act was accomplished through the application of pressure and that this pressure induced the defendants to make the payments is clear from a consideration of the latter's sensitive position under the franchise agreement. Defendants were obligated to sell only Dari-Delite ice cream and to purchase the ingredients therefor from suppliers designated by Dann. We think that in these circumstances the defendants had reason to conclude that a refusal to pay the commissions might jeopardize their franchise agreement or result in the loss of their source of supply. Thus viewed, their decision to make the payments was induced by pressure implicitly applied by Dann when he rejected defendants' complaints and insisted on his right to the overcharges.

As noted above, the second requirement for a finding of duress is that the payor at the time of his capitulation to the wrongful pressure did not have an immediate and adequate remedy in the courts to resist the payments. *Cf. McCrory Stores Corp. v. S. M. Braunstein, Inc.,* 99 *N. J. L.* 166 *(E. & A.* 1933); *Shoemaker & Co. v. Board of Health, supra; Dalzell, op. cit. supra.* The Appellate Division held there was no duress because "the defendants could have refused to pay that part of the price charged them which represented Dann's commissions and defended any action brought against them by him or plaintiff consequent thereon." 62 *N. J. Super.,* at *p.* 453. We disagree. First, if defendants had refused to pay that part of the price of mix which represented Dann's commissions, Farmland, not Dann or the plaintiff, would have brought an action against the defendants. It is uncertain, at best, whether Dann's conduct would be available to defendants as a defense in an action brought by the supplier. See Annotations, "Validity of Contract Executed Under Duress Exercised By Third Person," 4 *A. L. R.* 864 (1919), 62 *A. L. R.* 1477 (1929) (collecting cases). Second, if defendants had refused to pay Farmland that part of the price of mix corresponding to Dann's commissions, defendants would have risked losing their source of supply. Third, and more important, the Appellate Division's holding is based upon an unrealistically narrow interpretation of the phrase "immediate and adequate remedy" as it is used in the duress doctrine. The adequacy of the remedy is to be tested by a practical standard which takes into consideration the exigencies of the situation in which the alleged victim finds himself. See *S. P. Dunham & Co. v. Kudra,* 44 *N. J. Super.* 565 *(App. Div.* 1957); *Pompton Stationery Corp. v. Passaic, etc., Co., Inc.,* 127 *N. J. L.* 235 *(Sup. Ct.* 1941); *Dalzell, op. cit., supra.* In *Dunham,* the plaintiff-department store sued for the return of excess payments made to the defendant, a subcontractor of plaintiff's concessionaire who cleaned and stored furs of the plaintiff's customers. The defendant obtained the

excess payments by refusing to release the furs in his possession. The Appellate Division, holding that the plaintiff had no adequate remedy to resist the overpayments, said,

"Plaintiff, faced with the clamoring demands of its customers, plainly did not want it brought home to each of them at that juncture that its competitors, the defendants, were in fact attending the storing and cleaning of her [the customer's] coat. We think a public suit at that time did not constitute adequate relief." 44 *N. J. Super.*, at *p.* 572.

In *Pompton Stationery,* plaintiff newsdealer sued to recover excess payments made to the defendant, a wholesale news distributor. Plaintiff alleged that defendant delivered newspapers in excess of plaintiff's requirements and against his orders, and, by threatening to charge the costs against his standing deposit and cut off entirely his supply of newspapers, compelled him to pay charges which he did not properly owe. The former Supreme Court, affirming a judgment for plaintiff, held that the judicial remedies available to resist the excess payments were inadequate within the meaning of the duress doctrine. The rationale of the holding was that defendant had a monopoly over the distribution of all important newspapers within plaintiff's area and that any legal remedy could not have realistically protected the plaintiff from the defendant's future abuses of its monopolistic position.

Similarly, tested by the practicalities of the business situation in which the defendants here found themselves, we think they had no adequate remedy through any form of litigation. As previously noted, the defendants were obliged under their franchise agreement with the plaintiff to sell only Dari-Delite products and to purchase the ingredients therefor only from suppliers designated by plaintiff's agent, Dann. In addition, Dann had the authority whenever he wished to demand an accounting, to inspect the defendants' books, to receive and resolve all complaints, and finally to take over the franchise agreement in the event of any violation by the defendants. At the time Dann insisted he had

a right to the commissions, the franchise had about seven years to run. Under these circumstances, defendants had reason to conclude that even if they were successful in resisting the overpayments through litigation they would offend Dann, subject themselves to his harassing tactics, and ultimately jeopardize the success of their business. Accordingly, we hold that the defendants had no immediate or adequate remedy in the courts to avoid the overpayments representing Dann's commissions; and that therefore, the overpayments were involuntary.

 It follows from the foregoing that defendants are entitled to recover the amount of past overpayments from Dann, but they are here suing to recover the overpayments from plaintiff. This raises the question of whether Dann's conduct in exacting the commissions is attributable to plaintiff as his principal. The general rule is that a principal is accountable for the conduct of his agent acting within the scope of his authority even though the conduct is unauthorized and the principal receives no benefit from it, *e. g., Mick v. Corporation of Royal Exchange, etc.,* 87 *N. J. L.* 607, 613–615 (*E. & A.* 1914). The reason for the rule is that though the agent may have deceived the principal as well as the victim, since the principal placed the agent in the position where he had the power to perpetuate the wrong, the principal rather than the innocent third party should bear the loss. *Id.,* at *p.* 614; see Annotations 43 *A. L. R.* 615 (1926), 117 *A. L. R.* 389 (1938) (collecting cases). Under the franchise agreement with defendants, plaintiff was obliged to see that defendants received ice cream mix at $2.80 per ten gallons above the market price. To fulfill that obligation Dann, as plaintiff's agent, was specifically authorized, *inter alia,* to designate the suppliers of Dari-Delite mix, to control the quality of the mix supplied, and generally to supervise the relationship between suppliers and operators. His commission arrangement with Farmland was part of a contract by which Farmland was designated a supplier of Dari-Delite mix. Assuming Dann's

collection of those commissions was not authorized by the plaintiff, we think it is clear that the collection occurred within the scope of his authority as agent for plaintiff. Plaintiff failed to render its agreed upon performance under the franchise agreement; that its failure derived from the personally motivated conduct of its agent Dann does not relieve plaintiff from liability.

The plaintiff argues that since defendants never notified it of Dann's wrongful conduct, it should not be liable for the overpayments. This argument goes to the extent rather than the existence of liability. Otherwise stated, it affects the measure of damages. Whether the defendants violated a duty to mitigate their damages by failing to notify the plaintiff depends upon whether they had reason to believe the plaintiff was unaware of Dann's conduct. We think they did not. Dann had the broadest kind of agency relationship with the plaintiff. By his own testimony, he was "Ross Systems in New Jersey." He handled all of plaintiff's affairs in this State. In six years plaintiff never questioned any of his activities on its behalf. The defendants functioned as a Dari-Delite operator for about two years before Dann entered the agreement for side-commissions with Farmland. During that period, defendants must have observed the broad scope of Dann's agency. Under these circumstances, we think it could have reasonably appeared to them that Dann's collection of additional commissions was either known to or sanctioned by the plaintiff. Accordingly, we do not think that defendants had the obligation to notify the plaintiff of Dann's conduct.

For the foregoing reasons, we hold that the defendants are entitled to recover from plaintiff the total amount of past overpayments which represent the commissions Dann received through Farmland. As noted in our introductory statement of facts, the amount of the overpayments is not entirely clear. Hence, we leave that determination to the trial court upon remand.

This brings us to the question of whether plaintiff is entitled to specific performance of the franchise agree-

ment. As previously noted, we agree with the Appellate Division's holding that the overcharges resulting from the commission agreement between Dann and Farmland had the effect of increasing the price which the parties to the franchise agreement contemplated defendants would pay for their mix, and that, therefore, the overcharges constituted a material breach of the francise agreement. It is arguable that although Dann's conduct was attributable to the plaintiff for the purpose of determining its liability for the overpayments, the plaintiff should not be denied specific performance in the absence of notice by the defendants of Dann's behavior. It would follow that defendants could not rely upon past breaches to treat the contract as terminated. However, the plaintiff's attitude after learning in this litigation of Dann's commission arrangements makes it unnecessary for us to determine the effect of the past breaches. After learning of Dann's conduct, plaintiff made no effort to reimburse defendants for the overcharges and to see to it that there would be no repetition. At the argument on the appeal below, the court asked plaintiff if it could assure defendants that Dann would not continue wrongfully to collect commissions from suppliers in the future. Plaintiff replied that Dann had declared his intention to continue the practice and that it could not control his conduct in this respect; but it offered to indemnify defendants for the amount of any future commissions passed on in the price of mix. The Appellate Division held that since the action of Dann with plaintiff's knowledge would be attributable to plaintiff as his principal, and the effect of the commissions would be to increase the amounts payable by the defendants under the franchise agreement, plaintiff's position amounted to an anticipatory breach entitling the defendants to treat the contract as terminated. Therefore, the Appellate Division held that the plaintiff was not entitled to specific performance. We agree.

■ An anticipatory breach is a definite and unconditional declaration by a party to an executory contract—through word or conduct—that he will not or cannot render

the agreed upon performance. *Holt v. United Security Life Ins. Co., 76 N. J. L.* 585 (*E. & A.* 1909); *O'Neill v. Supreme Council Am. L. of Honor, 70 N. J. L.* 410 (*Sup. Ct.* 1904); *Dunn & Bradstreet, Inc. v. Wilsonite Products Co., Inc., 130 N. J. L.* 24 (*Sup. Ct.* 1943); *Miller & Sons Bakery Co. v. Selikowitz,* 8 *N. J. Super.* 118 (*App. Div.* 1950). If the breach is material, *i. e.,* goes to the essence of the contract, the non-breaching party may treat the contract as terminated and refuse to render continued performance. 6 *Corbin, Contracts,* § 1253 (1951). Plaintiff's position at the argument below amounted to an admission that it could not render the performance it promised defendants under the franchise agreement. We have held that the effect of the commission arrangement in increasing the price payable by the defendants for mix under the franchise agreement was a material breach. The offer of indemnification for future overcharges does not make plaintiff's prospective breach immaterial. Defendants agreed simply to pay $2.80 per ten gallons above the market price for ice cream mix. They did not agree to ascertain the manipulations of plaintiff's agent in collecting unauthorized commissions, to keep books and records reflecting those commissions, to pay the commissions as part of the price of mix, and wait for a rebate from plaintiff. In light of the foregoing, we think that the method of payment under an agreement which contemplates periodic payments within a continuous business relationship and which has a number of years yet to run goes to the essence of the contract. Accordingly, we hold that the plaintiff has committed an anticipatory breach which precludes it from obtaining the specific performance requested in this action.

The final issue involved in this appeal concerns the disposition of the sublease under which defendants occupy the premises at Wood Avenue in Linden. As previously mentioned, the Chancery Division held that the lease was integrally related to the franchise agreement and that since the agreement was at an end the lease should be cancelled. The Appellate Division held that any determination as to

the appropriateness of cancellation should be preceded by an inquiry into whether defendant Samila should receive from Dann, as a condition of cancellation, a fair proportion of the $10,500 paid for the stock of Linden Dari-Delite, Inc. In our view, the disposition of the lease is not properly a subject of adjudication in this litigation. The plaintiff, Ross Systems, is not a party to the lease and has no interest in the leasehold. Dann obtained the lease from the owner of the premises and had Dari-Delite of New Jersey, Inc., a corporation owned and controlled by him, designated as lessee. He did not obtain the lease as agent of Ross Systems. Rather, he formed his own company, with his own funds, and with exclusive control in himself personally with respect to the premises. As to the plaintiff, therefore, the lease and franchise agreement are not integrally related. Any controversy with respect to the leasehold is strictly between Dann's corporation (Dari-Delite of New Jersey, Inc.) and the defendants, and has nothing to do with this litigation.

The judgment of the Appellate Division insofar as it denies plaintiff's claim for specific performance is affirmed; it is reversed insofar as it denies defendants' recovery on their counterclaim and with respect to the treatment of the lease, and the cause is remanded to the Chancery Division for proceedings consistent with this opinion.

No. A–112:

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.

No. A–113:

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.