Accordingly, the order under review is reversed.

635 A.2d 551

BALLANTYNE HOUSE ASSOCIATES, A LIMITED DIVIDEND LIMITED PARTNERSHIP; FOREST HILL HOUSE ASSOCIATES, A LIMITED DIVIDEND LIMITED PARTNERSHIP; ROBERTO CLEMENTE–SHALOM TOWERS, INC., A NON–PROFIT HOUSING CORPORATION OF NEW JERSEY; 440 ELIZABETH AVENUE CORPORATION, A LIMITED DIVIDEND HOUSING CORPORATION OF NEW JERSEY; ZION TOWERS, INC., A LIMITED DIVIDEND HOUSING CORPORATION, PLAINTIFFS–RESPONDENTS, v. CITY OF NEWARK, NEW JERSEY, A MUNICIPAL CORPORATION, DEFENDANT–APPELLANT.

CLINTON HILL COMMUNITY GARDEN APARTMENTS, PLAINTIFF–RESPONDENT, v. CITY OF NEWARK, A MUNICIPAL CORPORATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1993—Decided December 27, 1993.

324

Before Judges SKILLMAN, KESTIN and WEFING.

*Kathleen C. Goger,* Assistant Corporation Counsel, argued the cause for appellant (*Michelle Hollar–Gregory,* Corporation Counsel, attorney; *Ms. Goger,* on the brief).

*John J. Petriello* argued the cause for respondents (*Levy, Ehrlich & Kronenberg,* attorneys; *Mr. Petriello,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Plaintiffs are limited dividend housing corporations and associations which entered into tax abatement agreements with Newark relieving them of the obligation to pay property taxes but requiring them to pay "an annual service charge for municipal services." When these agreements were executed, Newark was required by municipal ordinance to provide garbage collection services to plaintiffs' facilities. However, Newark repealed this ordinance in 1982 and enacted a new ordinance which classified plaintiffs' limited dividend housing facilities as commercial, *Newark, N.J. Ordinances* § 13A:1–1, ostensibly relieving Newark of its obligation to provide garbage collection services to plaintiffs. *Newark, N.J. Ordinances* § 13A:4–7(a). Sometime thereafter, Newark stopped collecting garbage from plaintiffs' facilities, and plaintiffs contracted for their own garbage collection services.

On June 19, 1989, plaintiffs Ballantyne House Associates, Forest Hills House Associates, Roberto Clemente–Shalom Towers, Inc., 440 Elizabeth Avenue Corp., and Zion Towers, Inc. filed an action in the Law Division challenging Newark's termination of garbage collection services to their facilities. On October 26, 1990, Clinton Hill Community Garden Apartments filed an identical action. Both complaints alleged that Newark had breached its tax abatement agreements with plaintiffs by terminating garbage collection services to their facilities. The complaints also alleged that the enactment of Newark's current garbage collection ordinance authorizing the termination of garbage collection to plaintiffs' facilities violated the equal protection guarantees of the federal and state constitutions. Newark counterclaimed, alleging that plaintiffs were in default in making certain municipal services payments required under the tax abatement agreements.

The cases were brought before the court by cross-motions for summary judgment. The trial court granted plaintiffs partial summary judgments, concluding that garbage collection was a "municipal service" which Newark had contracted to provide for the duration of the tax abatement agreements. Consequently,

Newark's termination of that service under the authority of the ordinance enacted in 1982 constituted a breach of contract. The court also concluded that Newark's current garbage collection ordinance violates the federal and state constitutions. Accordingly, the court entered partial summary judgments on October 9, 1992, enjoining Newark from enforcing its current ordinance against plaintiffs and ordering Newark to resume garbage collection from plaintiffs' facilities within thirty days. The court retained jurisdiction with respect to plaintiffs' claims for damages based on Newark's failure to provide garbage collection services during the preceding ten years and Newark's counterclaims for arrearages in payments required under the tax abatement agreements. The trial court subsequently granted Newark's motion for stays of these orders pending appeal.

We granted Newark leave to appeal from the orders granting plaintiffs partial summary judgments and consolidated the appeals. Thereafter, we denied plaintiffs' motion to dissolve the stays pending appeal.

We conclude that the trial court properly construed the tax abatement agreements to require Newark to provide garbage collection services to plaintiffs, at least as long as Newark continues to provide these services to other tax-paying multi-family housing facilities. However, the trial court erred in concluding that plaintiffs are necessarily entitled to specific performance of the agreements in the form of a resumption of garbage collection services upon thirty days notice without considering all relevant circumstances, including plaintiffs' delay in initiating these actions and the failure of at least some plaintiffs to make the payments required under the agreements. Therefore, we affirm the parts of the orders granting partial judgments which declare Newark's termination of garbage collection services to plaintiffs' facilities to be a breach of the tax abatement agreements, but reverse the parts of the orders granting equitable relief to plaintiffs and remand for the development of a more complete record on this issue. We also conclude that the trial court's determination that

the current garbage collection ordinance denies plaintiffs equal protection of the law was unnecessary and based on an inadequate record.

## I

Initially, we consider Newark's argument that the trial court should have granted its motions to dismiss plaintiffs' actions as untimely. Newark's motions were based upon *R.* 4:69–6(a), which states that "[n]o action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to review, hearing, or relief claimed."

Insofar as plaintiffs' complaints challenged the constitutionality of a municipal ordinance, they were maintainable either as declaratory judgment actions, *Bell v. Township of Stafford,* 110 *N.J.* 384, 390–91, 541 *A.*2d 692 (1988), or as actions in lieu of prerogative writs, *Hills Dev. Co. v. Township of Bernards,* 103 *N.J.* 1, 44–45, 510 *A.*2d 621 (1986). If viewed as declaratory judgment actions, plaintiffs' constitutional claims would not be subject to the time limit on actions in lieu of prerogative writs imposed by *R.* 4:69–6(a). Moreover, the Declaratory Judgment Act, *N.J.S.A.* 2A:16–50 to –62, does not contain a statute of limitations, and a declaratory judgment action challenging the constitutionality of a legislative enactment is not ordinarily subject to a defense of laches. *Cf. Asbury Park Press, Inc. v. Woolley,* 33 *N.J.* 1, 14–15, 161 *A.*2d 705 (1960). If viewed as actions in lieu of prerogative writs, plaintiffs' constitutional claims would be subject to the forty-five day limitations period of *R.* 4:69–6(a), but this limitation may be enlarged under *R.* 4:69–6(c) "where it is manifest that the interest of justice so requires." Actions in lieu of prerogative writs challenging the constitutionality of municipal ordinances have long been afforded the benefit of such enlargements of time. *See Brunetti v. Borough of New Milford,* 68 *N.J.* 576, 585–88, 350 *A.*2d 19 (1975). Therefore, the trial court properly denied Newark's motions to dismiss the parts of plaintiffs'

complaints challenging the constitutionality of its current garbage collection ordinance.

However, plaintiffs' claims that Newark breached the tax abatement agreements, which rely upon familiar principles of contract law and seek specific enforcement and money damages, are not maintainable as actions in lieu of prerogative writs. *Cf. O'Neil v. Township of Washington*, 193 *N.J.Super.* 481, 486, 475 *A.2d* 55 (App.Div.1984) (actions seeking money damages are not cognizable as actions in lieu of prerogative writs). Moreover, plaintiffs' breach of contract claims are not maintainable under the Declaratory Judgment Act. When "the parties have reached a stage where rights [under a contract] have been breached[,] [r]elief under the Declaratory Judgments Act is . . . unavailable." *Rego Indus. Inc. v. American Modern Metals Corp.*, 91 *N.J.Super.* 447, 453, 221 *A.2d* 35 (App.Div.1966). Consequently, plaintiffs' claims that Newark breached the tax abatement agreements are not subject to the time limitation of *R.* 4:69–6(a), but rather the general limitations period applicable to contract actions contained in *N.J.S.A.* 2A:14–1.

Although Newark asserts in its appellate brief that it "also moved to dismiss based on the six year statute of limitations applicable to contract actions, *N.J.S.A.* 2A:14–1," the trial record does not support this assertion. Newark's motions to dismiss were expressly based upon *R.* 4:69–6; they did not refer to any other limitations provision. Therefore, Newark is barred from raising this defense for the first time on its appeal to this court. *Nieder v. Royal Indem. Ins. Co.*, 62 *N.J.* 229, 234, 300 *A.2d* 142 (1973); *cf. Williams v. Bell Tel. Lab., Inc.*, 132 *N.J.* 109, 118–20, 623 *A.2d* 234 (1993).

Moreover, even if Newark had raised this limitations defense in a timely manner, Newark's alleged failure to perform its obligations under the tax abatement agreements could be considered a series of continuing breaches for which plaintiffs could maintain an action for any breach occurring within six years

of the filing of the complaint, even if more than six years had elapsed since Newark's initial breach. *See Barker v. Jeremiasen,* 676 *P.*2d 1259, 1261–62 (Colo.Ct.App.1984) (statute of limitations ran anew with each violation of lease's restrictive covenant); *Singer Co. v. Baltimore Gas & Elect. Co.,* 79 *Md.App.* 461, 558 *A.*2d 419, 425–26 (1989) (statute of limitations applied to each failure to provide contracted for electrical services); *see also Masonic Temple Ass'n v. Kistner,* 11 *N.J.Misc.* 761, 762, 168 *A.* 43 (Sup.Ct.1933).

Therefore, we affirm the trial court's denial of defendant's motions to dismiss plaintiffs' complaints as untimely. However, as discussed later in this opinion, plaintiffs' delays in commencing these actions may be relevant to a determination of the appropriate remedy for Newark's breaches.

## II

The legislation under which plaintiffs' facilities were constructed exempted limited dividend corporations and associations from taxation, but provided for a payment "in lieu of taxes ... of an annual service charge for municipal services supplied to said project" in an amount agreed upon between the tax-exempt entity and the municipality. *N.J.S.A.* 55:16–18.[1] The purpose of this tax exemption provision was "to facilitate and encourage private development of blighted areas." *Weehawken Env't Comm., Inc. v. Township of Weehawken,* 161 *N.J.Super.* 381, 398, 391 *A.*2d 968 (Law Div.1978).

The term "municipal services" is not defined in either *N.J.S.A.* 55:16–18 or the tax abatement agreements which plaintiffs entered into with Newark. Moreover, the parties have not presented any evidence indicating that the scope of mandated "municipal services" was discussed during the negotiations of the tax abatement agreements.

---

[1] This legislation was repealed by *L.*1991, *c.* 431, § 20.

Where the intent of a contract is not evident on its face, "the language used must be interpreted 'in accord with justice and common sense.'" *Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc.,* 249 *N.J.Super.* 487, 492, 592 *A.2d* 647 (App.Div.) (quoting *Krosnowski v. Krosnowski,* 22 *N.J.* 376, 386–87, 126 *A.2d* 182 (1956)), *certif. denied,* 127 *N.J.* 548, 606 *A.2d* 362 (1991). As the Court noted in *Tessmar v. Grosner,* 23 *N.J.* 193, 201, 128 *A.2d* 467 (1957):

> In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose.

The express purpose of the tax abatement agreements was to encourage and facilitate the construction of lower income housing. The legislatively prescribed means of pursuing this objective was to relieve limited dividend housing corporations and associations of their liability for municipal taxes but to require a municipality in which a lower income housing project is located to provide "municipal services" to the facility in exchange for negotiated payments in lieu of taxes. If we accepted Newark's contention that the tax abatement agreements only guaranteed plaintiffs those services which state or municipal legislation requires a municipality to provide in any event, Newark could eliminate or reduce various municipal services to plaintiffs while continuing to provide those services to similar tax-paying facilities. This would force plaintiffs to contract for these services, thereby increasing the operating costs of limited dividend housing corporations and associations, which could result in rent increases to lower income tenants and undermine the financial viability of lower income housing projects. Consequently, in the absence of an explicit reservation of this authority in the tax abatement agreements, we do not believe this could have been the parties' common intention. Rather, the most reasonable meaning of the term "municipal services" is one which includes all those services provided to similar tax-paying facilities. This interpretation of *N.J.S.A.* 55:16–18 and the tax abatement

agreements executed thereunder guarantees plaintiffs the same services provided to similar tax-paying facilities.

■ This interpretation also guarantees to plaintiffs the same garbage collection services which other limited dividend housing corporations and associations now receive as a result of prior litigation involving similar tax abatement agreements, in which a judgment requiring Newark to continue garbage collection services to other limited dividend housing facilities was affirmed by this court in an unreported opinion. *Aspen–Stratford Apartments Co. v. City of Newark,* A–6078–86T7; A–6115–86T7 (decided June 30, 1988). Although plaintiffs delayed for substantial periods of time before seeking similar relief, we do not believe that this circumstance should preclude them from enforcing the apparent intent of the tax abatement agreements. Even though such a delay by a private profit-making entity might be viewed as acquiescence in an alteration of the terms of a contract, thereby barring its enforcement, see *Van Dusen Aircraft Supplies, Inc. v. Terminal Constr. Corp.,* 3 *N.J.* 321, 326–28, 70 *A.2d* 65 (1949); *Ross Systems v. Linden Dari–Delite, Inc.,* 62 *N.J.Super.* 439, 449, 163 *A.2d* 184 (App.Div.1960), *aff'd in part, rev'd in part,* 35 *N.J.* 329, 173 *A.2d* 258 (1961), we believe that a different result is appropriate where the plaintiffs are tax-exempt entities which promote the public interest in providing housing to lower income families.

Therefore, we conclude that Newark breached its tax abatement agreements with plaintiffs by terminating garbage collection services to their facilities.

### III

■ We consider next whether the trial court properly awarded plaintiffs specific performance of the tax abatement agreements by ordering Newark to resume garbage collections from their facilities within thirty days. Specific performance is not an automatic remedy for a breach of contract, but rather a matter within the trial court's discretion which must be exercised on the basis of equitable considerations. *Barry M. Dechtman,*

*Inc. v. Sidpaul Corp.,* 89 *N.J.* 547, 551–52, 446 *A.2d* 518 (1982).
This means that "[t]he relief itself must not be harsh or oppressive." *Stehr v. Sawyer,* 40 *N.J.* 352, 357, 192 *A.2d* 569 (1963).
One pertinent consideration is whether the party seeking specific performance has acted in a timely manner in seeking relief or has instead delayed unduly to the prejudice of the breaching party. *Salvatore v. Trace,* 109 *N.J.Super.* 83, 91, 262 *A.2d* 409 (App.Div. 1969), *aff'd o.b.,* 55 *N.J.* 362, 262 *A.2d* 385 (1970); *Andreaggi v. Relis,* 171 *N.J.Super.* 203, 235, 408 *A.2d* 455 (Ch.Div.1979); *see also* 11 *Williston on Contracts* § 1418 (Jaeger ed., 3d ed. 1968).

The trial court should have afforded the parties an opportunity to present evidence relating to such equitable considerations before ordering Newark to resume garbage collection services to plaintiffs' premises within thirty days. Although Newark apparently terminated garbage collection services to plaintiffs' facilities in early 1983, plaintiffs failed to assert their right to the continuation of those services until more than six years later. Insofar as the record before us discloses, plaintiffs not only failed to take legal action to compel Newark to continue garbage collection, but failed even to informally protest the termination of those services. Under these circumstances, Newark is entitled to present evidence regarding any hardship it may suffer as a result of being required to resume garbage collection from plaintiffs' premises upon short notice.

A complete record should be developed regarding the manner in which Newark provides garbage collection services. Are these services provided by municipal employees or under a contract with a private hauling company? If Newark provides garbage collection services itself, will it be required to hire new employees or to purchase additional equipment to resume these services to plaintiffs? If garbage collection services are performed by a private hauling company, what is the term of the contract and can the contract be modified during its term to require service to plaintiffs' facilities? Other practical considerations may also be pertinent to the form of relief plaintiffs are entitled to receive. We

further note that the considerations pertinent to the appropriate form of equitable relief to be awarded plaintiffs may also be pertinent to their unadjudicated damage claims.

In addition, the record indicates that some plaintiffs have failed to pay Newark the full amount of the service charges required under the tax abatement agreements. The trial court should determine the circumstances of those underpayments and the amounts involved. Based on those findings, the court should decide whether it would be equitable to withhold the award of specific performance to those plaintiffs who are in arrears in the payment of annual service charges until those payments are made. We note that specific performance is not usually available to a party that is in material breach of its contractual obligations. *In re Estate of Hoffman,* 63 *N.J.* 69, 81, 304 *A.*2d 721 (1973); *Restatement (Second) of Contracts* § 369 (1981). However, if a party's non-performance is occasioned by the wrongful conduct of the party against whom the remedy is sought, a decree of specific performance may be appropriate. *See Joachim v. Belfus,* 107 *N.J.Eq.* 240, 244, 152 *A.* 161 (Ch.Div.1930), *rev'd on other grounds,* 108 *N.J.Eq.* 622, 156 *A.* 121 (Ch.Div.1931); 5A *Corbin on Contracts* § 1418 (1964).

## IV

After concluding that Newark violated its tax abatement agreements with plaintiffs by terminating garbage collection services, the trial court also concluded that Newark's current garbage collection ordinance violates the equal protection guarantees of the federal and state constitutions by excluding projects operated by limited dividend housing corporations and partnerships from municipal garbage collection while continuing to provide this service to other multi-family housing facilities. However, this ruling was unnecessary and based on an inadequate record.

It is firmly established that courts should not reach constitutional questions unless necessary to the disposition of

litigation. *O'Keefe v. Passaic Valley Water Comm'n,* 132 *N.J.* 234, 240, 624 *A.*2d 578 (1993); *Donadio v. Cunningham,* 58 *N.J.* 309, 325–26, 277 *A.*2d 375 (1971). Courts should exercise special restraint in passing upon the constitutionality of legislative enactments. *See Sente v. Mayor of Clifton,* 66 *N.J.* 204, 208–09, 330 *A.*2d 321 (1974). Moreover, if a question regarding the constitutionality of a legislative enactment must be addressed, the court should develop a full factual record to assure the proper resolution of the question. *Shelton College v. State Bd. of Educ.,* 48 *N.J.* 501, 522–23, 226 *A.*2d 612 (1967).

The trial court did not follow these principles in declaring Newark's current ordinance authorizing the termination of garbage collection services to plaintiffs' facilities to be unconstitutional. A declaration that this ordinance is unconstitutional would not entitle plaintiffs to any additional relief beyond what they are already entitled to receive based on Newark's breach of the tax abatement agreements. Just as the court is not required to automatically grant specific performance of the tax abatement agreements, it also would have authority to withhold immediate equitable relief upon a declaration of invalidity of the municipal ordinance. *See, e.g. Salorio v. Glaser,* 93 *N.J.* 447, 462–69, 461 *A.*2d 1100, *cert. denied,* 464 *U.S.* 993, 104 *S.Ct.* 486, 78 *L.Ed.*2d 682 (1983); *Robinson v. Cahill,* 62 *N.J.* 473, 520–21, 303 *A.*2d 273, *cert. denied,* 414 *U.S.* 976, 94 *S.Ct.* 292, 38 *L.Ed.*2d 219 (1973); *Borough of Neptune City v. Borough of Avon–by–the–Sea,* 61 *N.J.* 296, 310–11, 294 *A.*2d 47 (1972). Therefore, the trial court's determination that Newark violated its tax abatement agreements with plaintiffs by terminating garbage collection services to their facilities made it unnecessary for the court also to pass upon the constitutionality of the ordinance authorizing that termination.

Furthermore, even if it were necessary to pass upon the constitutionality of Newark's current garbage collection ordinance, the trial court should have required a full record to be developed on this issue. A municipal ordinance is entitled to a strong presumption of validity. *Brown v. City of Newark,* 113

N.J. 565, 571, 552 A.2d 125 (1989); *Pleasure Bay Apartments v. City of Long Branch,* 66 N.J. 79, 93–94, 328 A.2d 593 (1974). Consequently, the trial court should not have simply assumed that the exclusion of tax-exempt properties from garbage collection services is lacking in any rational basis. If the tax abatement agreements did not require Newark to provide garbage collection services to plaintiffs, it would be at least arguable that plaintiffs' tax-exempt status would provide a rational basis for not providing their facilities with the same discretionary municipal services extended to tax-paying entities. However, before reaching that conclusion, the court should have required a full record to be developed regarding the magnitude of plaintiffs' annual service charges, and whether those charges adequately compensated Newark for the services it is required to provide to plaintiffs' facilities. In addition, an adequate record would include a comparison of plaintiffs' annual service charges and the taxes which plaintiffs would be required to pay if they were not tax-exempt. Therefore, having concluded that Newark's termination of garbage collection services to plaintiffs' facilities violated the tax abatement agreements, the trial court should not have passed upon the constitutionality of Newark's current garbage collection ordinance.

Accordingly, we affirm the parts of the orders for partial summary judgment denying Newark's motions to dismiss plaintiffs' complaints as untimely and declaring that Newark's termination of garbage collection services to plaintiffs' facilities was a breach of the tax abatement agreements. However, we reverse the parts of those orders declaring Newark's current garbage collection ordinance to be unconstitutional and granting plaintiffs specific performance, and remand to the trial court for further proceedings consistent with this opinion.