693 A.2d 517

AMERICA'S DREAM HOMES, INC., A NEW JERSEY CORPORA-
TION, PLAINTIFF–RESPONDENT, v. THE INSURANCE
COMPANY OF AMERICA, HOME BUILDERS INSURANCE
SERVICE, INC., AND YOUNG & PERRY INSURANCE, DE-
FENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted April 14, 1997—Decided May 12, 1997.

Before Judges LANDAU and WALLACE and KIMMELMAN.

*McElroy, Deutsch & Mulvaney,* attorneys for appellants (*James Lisovicz* and *Gary S. Kull,* of counsel; *Mr. Kull,* on the brief).

*Cole, Schotz, Meisel, Forman & Leonard,* attorneys for respondent (*Steven R. Klein,* of counsel; *Mr. Klein* and *Luis Salazar,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff America's Dream Homes, Inc. (ADH), is a developer of affordable housing in Newark. Defendants The Insurance Company of America, and Home Builders Insurance Services, Inc. (collectively "the Insurers") provided builder's risk insurance to ADH for direct physical loss or damage (including theft) to houses and contents as constructed, prior to their conveyance or lease to prospective occupants. Commencing in June, 1993, this coverage was provided under a "reporting form" policy.

The policy provides in part:

4. REPORTING PROVISIONS:

    a. By the last day of each month you will report to us the total estimated completed values of all buildings you started during the previous month. This report is to be made on the form we provide [1] for this purpose and must include the total estimated completed value including labor, overhead and materials and, if coverage is desired, profit.

    The starting date for the purpose of the report is the date when you first put the building materials on the construction site.

    . . . .

    c. If at the time of loss you have not made the report as required in this provision, we cover only those starts previously reported.

    d. You must pay premiums based on the total estimated completed value of each building using the rate we furnish. Premium payment must accompany the report in order for the reported buildings to be covered.

    e. The premium charged is fully earned and no refund is due you when coverage ends.

    f. You will keep accurate construction records regarding property we cover under this policy. This includes the total estimated completed value of the property and a record of all contracts of sale dealing with the property.

---

[1] The fourth provision contains the due date by which "payment must be received" in order for "coverage to begin when construction was started or supplies delivered to the job site."

g. If at the end of 12 months from the time you first reported a start to us, you still have that building in your inventory, you may report that building to us a second time.

h. Our acceptance of a report of value does not waive or change any part of this policy nor stop us from asserting any right we have under the terms of this policy.

The Builder's Risk Reporting Manual issued to ADH by the insurers instructs:

Annual Rate—Proper Reporting of New Starts.

Once your Builder's Risk policy is issued, you will receive a reporting form each month. A copy of the Builder's Risk reporting form is shown on the back page. You must use this form to report any new starts which occurred before the *Month Ending Date*, and return it, along with the premium payment, prior to the *Due Date*.[2]

*Note: Once material which will be part of the completed structure is delivered to the construction site (including foundation), it is considered a start.*[3]

If a start is reported properly, coverage reverts back to the date that materials were first delivered to the construction site.

*If the reporting form and the premium payment are delinquent, coverage does not begin until the date that the form and payment are received by the Home Builders Insurance Program in Jacksonville, Florida.*[4]

. . . .

Remember, your Builder's Risk reporting form must be used to report any new starts (annual rate) or entire inventory (monthly rate) for the *Month Ending* Date, and returned, along with the premium payment, prior to the *Due Date*. If there are no starts to report, it is not necessary to return this form.

The Manual also advises that the "Due Date", pointed out by a large number 10 on the reproduced sample reporting form it contains, will be pre-printed on each monthly reporting form provided by the insurers to the builder, and that "all structures in inventory each month ... must be reported by due date."

Each month a reporting form was forwarded to ADH. Exactly as reproduced and advised in the manual, each monthly form

---

[2] The reporting manual contains an illustrated reporting form which makes clear that it must be received with premium payment before the last day of each month in order to cover retroactively starts of the *previous* month.

[3] Italicized in text.

[4] Italicized in text.

included a pre-printed date (e.g., 8/31/93, 9/30/93, *et seq.*). The text of its instructions read:

> Payment must be received by [e.g. 8/31, 9/30] in order for coverage to begin when construction was started or supplies were delivered to the job site. If payment is received after the date shown above, coverage will be effective on the date received.

Thus, if a builder complies with the payment and reporting requirement, coverage is *retroactive* to reported new building starts dating back to the month *before* that month in which the designated due date is the last day. Assuming compliance by the builder, the insurers would not be free to reject coverage even if a loss were known to have occurred respecting one of the timely listed starts. Under these terms however, if the report and payment of premiums applicable to the new starts are not received by the designated due date, *retroactivity* of coverage, but not prospective coverage, is denied as to starts during the reporting period. Coverage would begin upon receipt of the report and payment in that event.

■  The present dispute arises because summary judgment was awarded to ADH, holding the insurers liable for damages (the amount of which has been since stipulated) for theft losses on risks respecting which reports and payments were mailed (regular mail) prior to the designated due date but not received by the insurers until after the due date designated in the reporting form. If covered only as of time of receipt, the losses would not be insured. If dates of mailing, as certified by the treasurer of ADH but not otherwise established, govern, then coverage would have been retroactive prior to the date of loss.

In the present case, the insurers mailed monthly to ADH, by regular mail, the reporting forms mentioned above, together with pink envelopes intended to be used for return of the reporting forms. According to its treasurer's certification, these were completed and mailed out before the end of each month, even if received in the following month by the insurer.

Citing *Dickey v. Hurd,* 33 *F.*2d 415 (1st Cir.), *cert. denied,* 280 *U.S.* 601, 50 *S.Ct.* 82, 74 *L.Ed.* 646 (1929), the "Mailbox–Rule", and *Ballantyne House Associates v. City of Newark,* 269 *N.J.Super.* 322, 635 *A.*2d 551 (App.Div.1993), the motion judge found that ADH was in compliance, or in substantial compliance, with the reporting provisions. The judge appears to have reasoned that the reporting form practice constituted a series of offers by the insurers which, by their use of regular mail to provide the report forms and the provision of return-mail envelopes, contemplated acceptance (and thus a binding agreement) at the time ADH mailed the forms.

In *Rugala v. N.J. Ins. Underwriting Ass'n,* 261 *N.J.Super.* 139, 618 *A.*2d 352 (App.Div.1992), *aff'd,* 131 *N.J.* 110, 618 *A.*2d 348 (1993), we found reason to enforce strictly policy provisions imposing a date-received condition upon regular mail, as distinct from certified mail bearing a cancellation date, in order to guard against fraudulent submissions of back-dated applications after a casualty loss has been suffered. Superficially it might appear that this potential is not present in the reporting form policy at issue, because a casualty loss might be suffered during the retroactive reporting period up to two months after a given housing start. The present policy provides, however, that if the builder has not complied with the payment and reporting requirements, only the starts previously reported will be covered. Thus a similar, if not identical, risk of fraudulent back-dating is presented. More importantly, *Rugala* illustrates that a reasonable date-received requirement will be enforced, if it has been adequately communicated.

It is true that the method of communication of the date-of-receipt requirement varies in this case from that employed in *Rugala,* but only in form, not clarity. In this case, the process of offer and acceptance between the insurers and ADH had been concluded, and the builder's risk policy was in effect. Thus, we disagree with ADH's argument that the "mailbox" rule should be here deemed to govern as a matter of "common sense and public

policy." There was an ongoing insurance policy in existence. There was no series of mini-offers to be "accepted" by ADH. There was, instead, an agreed and fairly communicated method of reporting additional risks in order to secure retroactive coverage.

Although the reporting forms were mailed with return envelopes enclosed by the insurers to ADH towards the end of each month, the new starts to be reported and paid for were those for the *previous* calendar month. There was no unreasonable time pressure which might operate to hamper an insured's ability to comply with the date prominently designated on the reporting form as the date by which payment must be received by the insurers in order to trigger retroactive coverage, as distinct from coverage effective on the date received.

These conditions to retroactivity were reasonable, understandable to a sophisticated large scale builder, and not violative of any "public policy" that we discern to be applicable.

Further, we find no occasion for ADH's invocation of an estoppel argument, arising out of the insurer's retention of the premiums and housing start report before communicating rejection of the losses later claimed by the insured. This was entirely consistent with the policy provisions, and with the advice plainly communicated in the manual and on the report form, that coverage of housing starts for which premiums and reports were not received by the appropriate due date would be effective upon receipt. The policy also stated that acceptance of a monthly report shall not be deemed a surrender of any right to deny coverage.

As the applicable conditions were plainly and adequately communicated to the sophisticated insured, we reverse the grant of summary judgment to ADH.

The insurers' certifications and documentation respecting the applicable dates of receipt do not appear to have been contested prior to consideration of the motion, or prior to entry of the order rendering judgment final on July 12, 1996. However, the recent

amendments to *R.* 4:46–2 did not become effective until *September 1, 1996.* In consequence, we are obliged to remand to the Law Division for the purpose of determining whether to accept the dates of receipt applicable to the premiums and reports for the starts which were the subject of the various losses. If the insurers' certifications are unopposed under *R.* 4:46–2(b), summary judgment shall be entered for the defendant insurers. If factual accuracy is deemed sufficiently contested under the amended Rule, the judge shall resolve the date of receipt issue by holding a plenary hearing, and shall thereafter enter judgment consistent with this opinion.

Reversed and remanded.