718 A.2d 1223

OBIANUJU OKOSA AND PETER OKOSA, PLAINTIFFS–APPEL-LANTS, v. TAWN D. HALL AND RECIPROCAL MANAGEMENT COMPANY, DEFENDANTS, AND NEW JERSEY CITIZENS UNITED RECIPROCAL EXCHANGE, DEFENDANT–RESPON-DENT.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1998—Decided October 23, 1998.

Before Judges RODRIGUEZ and KIMMELMAN.

*Craig M. Rothenberg* argued the cause for appellants (*Rothenberg & Pashaian,* attorneys; *Mr. Rothenberg,* on the brief).

*Mark Berard* argued the cause for respondent (*Durkin & Durkin,* attorneys; *Mr. Berard,* on the brief).

The opinion of the court was delivered by .

KIMMELMAN, J.A.D. .

The issue on this appeal by plaintiffs is whether their belated payment of an installment due on their automobile insurance policy was sufficient to avoid the cancellation of their policy

and sanction the filing of their claim for Personal Injury Protection (PIP) benefits as being timely made. The resolution of this matter involves the interpretation and application of the so-called "Mailbox Rule" and whether, by reason thereof, plaintiffs' automobile insurance policy survived automatic cancellation at 12:01 a.m. on March 16, 1994.

Plaintiff Obianuju Okosa was involved in an accident with defendant Tawn D. Hall (Hall) on March 16, 1994. Hall was uninsured. Accordingly, plaintiffs sought PIP benefits. Plaintiffs brought an action against defendants Hall and plaintiffs' insurer New Jersey Citizens United Reciprocal Exchange. Defendant insurance carrier moved for and was granted summary judgment and plaintiffs' claim was dismissed. We now reverse.

Plaintiffs were insured under an automobile insurance policy which required a quarterly premium payment to be made on February 28, 1994. At the close of business on February 28, 1994, the carrier directed a letter to plaintiffs which was posted on March 1, 1994, that advised plaintiffs that they had failed to pay the $347.50 installment then due and that their policy would be automatically canceled at 12:01 a.m. on March 16, 1994, unless payment was made by that date. The letter further advised plaintiffs:

> If we receive payment *on or before the cancellation date,* we will continue your policy with no interruption in the protection it affords. *If you've recently mailed your payment, please disregard this notice.*
>
> [Emphasis added.]

On March 15, 1994, while the policy was still in effect, plaintiffs mailed, by certified mail, a check for the required payment. As indicated, the automobile accident with the uninsured defendant occurred on the next day. It is not known exactly when plaintiffs' check was received but it is known that the carrier deposited and "cashed" the check on March 22, 1994. Plaintiffs were subsequently advised in response to their claim that no PIP benefits would be paid because the policy had been canceled prior to the accident.

Plaintiffs contend that the so-called "Mailbox Rule" applies to the facts of this case and that the installment payment mailed on March 15, 1994, constituted a timely payment made prior to 12:01 a.m. on March 16, 1994.

■ Generally speaking, the Mailbox Rule sanctions the formation or completion of a contractual undertaking upon the act of mailing where the use of the mail is authorized by the other party as the medium for response. The rule is succinctly set forth as follows:

> Where parties are at distance from one another, and an offer is sent by mail, it is universally held in this country that the reply accepting the offer may be sent through the same medium, and, if it is so sent, the contract will be complete when the acceptance is mailed, ... and beyond the acceptor's control; the theory being that, when one makes an offer through the mail, he authorizes the acceptance to be made through the same medium, *and constitutes that medium his agent to receive his acceptance; that the acceptance, when mailed, is then constructively communicated to the offeror.*
>
> [*Dickey v. Hurd,* 33 *F.*2d 415, 417 (1st Cir.), *cert. denied,* 280 *U.S.* 601, 50 *S.Ct.* 82, 74 *L.Ed.* 646 (1929) (emphasis added).]

There is no question in this case that the carrier addressed plaintiffs by mail concerning their tardy payment. Its letter of February 28, 1994, posted March 1, 1994, invited plaintiffs' response with payment by mail. In so responding, plaintiffs did so by means of certified mail. The use of certified mail by plaintiffs was perspicacious because it insured proof of mailing and its use avoided the thorny issue which would arise from a fraudulent response by them that post-dated the accident.

In *Rugala v. New Jersey Ins. Underwriting Ass'n.,* 261 *N.J.Super.* 139, 142, 618 *A.*2d 352 (App.Div.1992), *aff'd o.b.,* 131 *N.J.* 110, 618 *A.*2d 348 (1993), we recognized the factual mechanics underlying in the Mailbox Rule without mentioning the rule itself. However, we rejected its applicability to the facts of that case. *Ibid.*

Plaintiffs in *Rugala* had sent their payment to renew an insurance policy by regular mail. Plaintiffs suffered a fire loss on the next day and the insurer did not receive plaintiffs' renewal check until the following day. 261 *N.J.Super.* at 141, 618 *A.*2d 352. It was held that the policy had expired at 12:01 a.m. on the previous

day because the renewal payment had not been received prior to the expiration. The mailing of payment by regular mail was not deemed a renewal because the insured's contractual documents drew a distinction between certified mail and regular mail. *Id.* at 144, 618 *A.*2d 352. The contract specifically provided that if regular mail was used instead of certified mail, the carrier would be bound only from the date on which the payment was actually received. The payment was received on the day after the fire loss occurred. In permitting the contractual distinction between regular and certified mail, we held that certified mailing was deemed sufficient because that method enabled the sender to obtain proof of the date of mailing and guarded against a fraudulent back-dated submission. *Id.* at 146, 618 *A.*2d 352.

In *America's Dream Homes, Inc. v. Insurance Co. of Am.,* 300 *N.J.Super.* 543, 550, 693 *A.*2d 517 (App.Div.1997), we again recognized the Mailbox Rule but found it to be inapplicable there because under the insurance policy, the coverage for a risk of loss would begin only when the carrier had already received notice from the insured as to the personal property to be covered by the builder's risk insurance.

We have completely reviewed the record and are satisfied that by the authorizing the use of mail as a means of paying premiums, the carrier constituted the postal authorities as its agent. *Bankers Nat. Life Ins. Co. v. Cooper,* 111 *N.J.Super.* 264, 272, 268 *A.*2d 78 (Ch.Div.1970). Accordingly, the decision in this matter is controlled by the Mailbox Rule.

As a consequence, the entry of summary judgment in favor of the carrier is reversed. There being no material facts in dispute, plaintiffs' cross-motion for summary judgment should have been granted. We remand this matter (1) for the reversal of summary judgment entered in favor of the carrier on July 25, 1997; (2) for the entry of judgment in favor of plaintiffs to the effect that the automobile insurance policy remained in force and effect on the day of the accident; (3) for the consideration on the merits of plaintiffs' PIP claim; and (4) for the consideration of plaintiffs'

application for costs and counsel fees pursuant to the provisions of *R.* 4:42–9(a)(6).

Reversed and remanded.