184 N.J. Super. 320 (1982)
446 A.2d 174
JOSEPH PAUL ROMANO AND MARIA A. ROMANO, HIS WIFE, AND NUFIELO SODANO AND EVELYN SODANO, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
WASHINGTON TOWNSHIP ASSOCIATES, A NEW JERSEY PARTNERSHIP, DEFENDANT-RESPONDENT, AND WTA CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, WEINGARTEN AND PIZZO, A NEW JERSEY PARTNERSHIP, AND STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1982.
Decided March 31, 1982.
*321 Before Judges JOELSON and GAULKIN.
Richard B. Thomas, Jr. argued the cause for appellants (Busch & Thomas, attorneys).
Ronald Reichstein argued the cause for respondent (Beck, Reichstein & Guidone, attorneys).
PER CURIAM.
Plaintiffs appeal from that portion of a "Preliminary Judgment for Foreclosure" which excepted from foreclosure sale a particularly described portion of the mortgaged premises. We find that exception to be error and accordingly reverse.
By deed of July 19, 1974 plaintiffs conveyed to WTA Corporation (WTA) an unimproved tract of 87.219 acres. The consideration was $169,204.88, of which $49,204.88 was paid in cash and credits at closing and the balance by the delivery of a $120,000 bond and purchase money mortgage. Shortly thereafter WTA conveyed the entire tract to its principals as partners of Washington Township Associates (Associates); WTA had no other business or assets and was soon formally dissolved.
The contemplation of the parties to the original conveyance, and of Associates, was that the tract would be subdivided and developed for residential use. Associates proceeded in good faith toward that end but was unsuccessful in its efforts to obtain necessary municipal approvals. Through 1978 Associates paid the taxes and interest as required by the mortgage but *322 thereafter defaulted not only in those payments but in the required payment of the $120,000 principal on July 18, 1979.
On March 4, 1980 plaintiffs filed their complaint in foreclosure. Associates' answer asserted by separate defense that pursuant to the terms of the mortgage it was "entitled to the release of an initial 20.37 acres of mortgagor's selection at any time, without payment of any amount on account of the within mortgage," and that it "has elected" to have the acreage released; it is conceded that the "election" was first made in that pleading. Following a plenary hearing the trial judge sustained the separate defense and included in the foreclosure judgment the exception that is here in issue.
The mortgage covenant which Associates purported to invoke is as follows:
Mortgagee agrees to release acreage from the lien of the within mortgage at the rate of $2,425.00 per acre to be paid on account of the principal balance due hereunder. Such acreage to be released shall be at the selection of mortgagor. Mortgagor shall also be entitled to the release of an initial 20.37 acres of mortgagor's selection at any time without payment of any amount on account of the within mortgage.
Plaintiffs argued in the trial court, as they do here, that in this setting Associates, as a subsequent grantee, should not be permitted to have recourse to this provision inserted for the benefit of the "mortgagor." The trial judge did not address that contention in his ruling; we find it compelling.
The provision is ambiguous on its face: it does not expressly authorize subsequent grantees to demand a partial release nor does it expressly limit that right to the original mortgagor. Accordingly, its application "must be largely dependent upon the special circumstances of the case." Ventnor Inv. & Realty Co. v. Record Develop. Co., 79 N.J. Eq. 103, 105 (Ch. 1911); see also 29 N.J.Practice (Cunningham and Tischler, Law of Mortgages) (1975), § 149 at 688; Annotation, "Construction of provision in real estate mortgage, land contract, or other security instrument for release of separate parcels of land as payments are made," 41 A.L.R.3d 7 (1972), § 7 at 34 et seq.
*323 The record here shows, as the trial judge found, that the covenant was intended to permit the mortgagor-developer to release from the lien of the mortgage portions of the tract that were subdivided and readied for sale. That development never eventuated; yet at the same time the principals of WTA had effectively deprived plaintiffs of any recourse on the bond by transferring the entire tract to themselves as partners and dissolving the mortgagor corporation. Thus, upon the aborting of the development plans and after default on the mortgage and the commencement of the foreclosure action, plaintiffs found themselves faced with an "election" by those same principals, now in partnership, to release what is conceded to be the best part of the tract, leaving plaintiffs with both their security impaired and without recourse under the bond for any deficiency. We find that the covenant cannot fairly be read to authorize its exercise by Associates under these circumstances.
The case of Dimeo v. Ellenstein, 106 N.J. Eq. 298 (Ch. 1930), is most instructive. There three individuals purchased a 25-acre tract, giving a purchase money mortgage which provided for release of portions of the premises "at the option of the mortgagors" upon making certain payments. The individuals conveyed the entire tract to their wholly-owned corporation which then conveyed it to Mansfield, Inc., which requested a release of a portion of the property and tendered the sum required; the tender was refused. In an ensuing foreclosure action Mansfield, Inc. counterclaimed to compel execution of the demanded release.
The Court of Chancery found that the provision of the mortgage relied upon was not available for invocation by Mansfield, Inc. While acknowledging that in appropriate circumstances a partial release covenant can attach to the tract and inure to the lot owners (see, e.g., Hagaman v. Frederick, 109 N.J. Eq. 288 (Ch. 1931); Malba Terrace Corp. v. Portaupeck Properties, 105 N.J. Eq. 453 (Ch. 1930); 29 N.J.Practice, supra, § 149 at 688), the court observed that Mansfield, Inc. was not a mere lot owner but rather had succeeded to the entire tract and was seeking "to *324 withdraw the more valuable of the security, leaving the dregs out of which to make the balance of the purchase money." 106 N.J. Eq. at 299. In concluding that the covenant was not intended to be available under those circumstances, the court made the following observation which is particularly persuasive here:
... [the original mortgagors] would be stimulated to further improve the land to realize the mortgage money and so discharge themselves of their bond obligation; an urge that would be absent in their assigns. [Ibid.]
Here, too, if the demanded acreage were released to Associates, plaintiffs would be left with the "dregs" of the property and with a bond whose obligation no party has any "urge" to discharge. The covenant did indeed permit the "mortgagor" to demand just such a release, but if WTA had made the election, the released acreage or its proceeds would have been available for satisfaction of any deficiency judgment. To permit Associates to make that election under the circumstances shown here would be to distort the aim and intent of the covenant and permit it to be used to effect an inequitable result.
The provision of the Preliminary Judgment appealed from is reversed and the matter is remanded to the Chancery Division for proceedings consistent with this opinion.