265 N.J. Super. 489 (1993)
627 A.2d 1160
GOLDMAN SOUTH BRUNSWICK PARTNERS, PLAINTIFF-RESPONDENT,
v.
A. JOSEPH STERN, EASTERN HOMES, L.P., AND RAYMOND ROAD II CORP., DEFENDANTS-APPELLANTS (TWO CASES).
Superior Court of New Jersey, Appellate Division.
Submitted April 20, 1993.
Decided July 6, 1993.
Before Judges BAIME and WALLACE.
*490 Greenbaum, Rowe, Smith, Ravin & Davis, attorneys for appellants (David L. Bruck, of counsel; Bruce D. Greenberg and Ellen A. Silver, on the brief).
Hellring, Lindeman, Goldstein & Siegal, attorneys for respondent (Charles Oransky, of counsel; John A. Adler, on the brief).
The opinion of the court was delivered by WALLACE, J.S.C. (temporarily assigned).
This is an appeal from the grant of summary judgment in favor of plaintiff in two separate mortgage foreclosure complaints which were consolidated in the Chancery Division. Plaintiff is a New Jersey partnership which owned vacant land in South Brunswick Township. Defendant Joseph Stern is a real estate developer. Defendant Raymond Road II Corp. is a corporation owned and controlled by Stern. Defendant Eastern Homes, L.P. is a New Jersey limited partnership in which Stern is a general partner. Defendants contend that the trial court erred in denying their motion to release a portion of the property from the lien of the mortgage pursuant to the agreement. We disagree and affirm.

I
The facts are uncomplicated. On December 30, 1986, pursuant to an agreement dated November 21, 1983, plaintiff sold to defendants a portion of the land owned by plaintiff in South Brunswick on which defendants developed single-family homes and town houses known as "Princeton Walk." (Tract I). On May 2, 1989, plaintiff sold to defendants the balance of the land consisting of approximately 222 acres. (Tract II). The purchase price of Tract II was $7,390,184.97. The portion of the purchase price allocated in cash was $1,849,796.24. After taking into account "credits," defendants then gave plaintiff two promissory notes in the amount of $3,635,887.12 and $1,121,250 for the remainder *491 of the purchase price. Both notes were secured by a mortgage on Tract II.
The Rider to the mortgage provided in pertinent portion:
(A) Mortgagor shall be entitled to obtain, without charge or payments therefor, the release from the lien of this Mortgage of any open space, roads ... [which] are otherwise required to allow for development of the subject property in accordance with Mortgagor's development plan....
(B) Any payments made by Mortgagor for releases of land from the lien of this Mortgage shall be applied against the principal balance otherwise due hereunder.
(C) Mortgagor shall, at any time or times, be entitled to obtain the release of lands from the lien of this Mortgagee upon payment to the Mortgagee for each residential unit and related undivided interests in common elements so related an amount determined as follows:
(1) For each residential unit, including single family dwellings and townhouse units ... to be released, there shall be paid ... $13,000 [per unit]. In addition, for each acre not subdivided into units to be released from the lien of this Mortgage, there shall be paid ... $40,000 [per acre].
....
[(2)] The location of released units and related undivided interests in common elements and/or released acreage shall be as specified by Mortgagor provided....
Such releases shall be provided by Mortgagee to Mortgagor forthwith upon request therefor by Mortgagor accompanied by the appropriate payment and the appropriate form of release....
....
(D) Anything herein contained to the contrary notwithstanding, it is expressly understood and agreed between the parties that the lien of the within Mortgage shall be subject and subordinate to the following: A mortgage or mortgages from one or more institutional lenders for land, land improvement and/or construction purposes.... For purposes hereof, "institutional lenders" shall mean and refer to any bank, savings bank....
....
(G) In the event of any default under the terms, covenants and conditions of this Mortgage or the Note which it secures, resulting in an acceleration of the principal amount due ... the sole remedy of the Mortgagee shall be to foreclose on the property covered by this Mortgage and ... there shall be no liability otherwise on the part of the Mortgagor, it successors or assigns.
....
(I) Mortgagee agrees to execute and deliver the release of the Excluded Option Property as defined and provided in the Real Estate Purchase/Option Property ... forthwith upon demand therefor by the Mortgagor in consideration of the downpayment paid by the Mortgagor at the closing of title to the above property covered by this Mortgage in the amount of $1,831,836.89, without any cost or expense whatsoever to the Mortgagor.
*492 (emphasis added). Pursuant to Paragraph D of the Rider, defendants borrowed monies from United Jersey Bank (UJB) and plaintiff's mortgage was subordinated to UJB on approximately eighty-nine percent of the property.
Applying the per-unit release price of $13,000 to the above-mentioned cash sum of $1,849,794.24, defendants were initially entitled to request the release of a total of 142.29 units. From July 1989 through February 1990, defendants requested and received releases of sixteen units in connection with the sale of those units. On April 6, 1990, plaintiff released an additional sixty-seven units to defendants. In total, eighty-three units of subdivided lots were released to defendants.
After making an interest payment on December 6, 1989 in the amount of $277,608.26, defendants failed to make any principal or further interest payments. When defendants failed to make the June 1, 1990 principal payment, plaintiff by letter dated July 2, 1990 notified defendants of their default. Plaintiff notified defendants again by a letter dated June 18, 1991 of their default in failing to make the June 1, 1990, December 1, 1990 and June 1, 1991 principal and interest payments.
On March 14, 1991, plaintiff filed a foreclosure complaint under Docket Number F-4699-91 (Complaint I) with the Chancery Division concerning the portion of the property free from UJB's lien. On April 29, 1991, defendants filed an answer.
On November 7, 1991, plaintiff filed a second foreclosure complaint (Complaint II) under Docket Number F-20310-91 with the Chancery Division concerning the portion of the property subordinate to UJB's lien. On December 17, 1991, defendants filed an answer. The cases were consolidated.
On February 21, 1992, defendants moved to file an amended answer, affirmative defenses and counterclaim to Complaint II. The motion was granted on February 21, 1992. On February 27, 1992, defendants filed a counterclaim asserting that they are entitled to additional releases of the property based on the remaining *493 sum from the $1,831,836.89 cash down payment. After responding to the counterclaim, plaintiff filed a motion for summary judgment. At that time plaintiff held a first lien on eleven percent of the property consisting of approximately twenty-five acres. On May 18, 1992, defendants filed a cross-motion for partial summary judgment seeking, in part, releases of the property in consideration of the previous cash payment. Defendants essentially contended that because Paragraph C of the Rider provides that they are entitled to obtain releases "at any time or times," additional releases of the property were warranted. On June 10, 1992, defendants specifically requested the motion judge for the release of 19.27 acres of the property which was subject to plaintiff's lien.
On June 12, 1992, after oral argument on the motion and cross-motion for summary judgment, the motion judge granted judgment in favor of plaintiff and denied defendants cross-motion.

II
Defendants essentially contend the trial judge erred in holding that the release provisions are unenforceable after default. Defendants direct our attention to several vintage equity cases which held that release provisions were enforceable after default, absent a contractual provision to the contrary. See Park Inv. and Dev. Co. v. Vanderzee Bros. Bldg. Co., 119 N.J. Eq. 1, 180 A. 838 (Ch. 1935); Harris v. Pearsall, 83 N.J. Eq. 472, 91 A. 880 (Ch. 1914); Hall v. Home Bldg. Co., 56 N.J. Eq. 304, 38 A. 447 (Ch. 1897).
The trial judge concluded that the mortgage was an executory contract and once defendants breached the contract by their failure to pay principal and interest payments, it would be unfair to permit defendants to continue to receive benefits by way of release of units of land. We agree and think this is the better reasoned approach. The Restatement (Second) of Contracts (1981) provides authority for this approach. Section 237 provides:

*494 Except as stated in § 240, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that these be no uncured material failure by the other party to render any such performance due at any earlier time.
This principle was applied by our Supreme Court in Ross Sys. Linden Dari-Delite, Inc., 35 N.J. 329, 173 A.2d 258 (1961) where the Court held that a franchisor could not enforce its rights under a franchise agreement because it had violated its obligations under the contract. The Court stated, "If the breach is material, i.e., goes to the essence of the contract, the non-breaching party may treat the contract as terminated and refuse to render continued performance." Id. at 341, 173 A.2d 258.
We have no doubt but that this same principle should apply here. Moreover, failure to apply this basic contract principle would make no economic sense and produce an unjust result. Kenneth J. Goldman on behalf of plaintiffs stated in his certification submitted in support of plaintiff's summary judgment motion that "[t]he agreement clearly contemplated that the grant of releases would be followed by the sale of homes which would generate monies to be used to pay the Mortgage." As noted above, plaintiffs have a first lien on only twenty-five acres. If defendants are permitted to obtain release of the nineteen acres, plaintiff will effectively have no remedy. Furthermore, the mortgage is nonrecourse in nature, that is plaintiff may only look to the land subject to its lien and cannot look to other assets of defendants.
Moreover we note in a related setting this court has avoided the formalistic approach advocated by defendants and adopted a more flexible approach to reach a just result. In Romano v. Washington Township Assocs., 184 N.J. Super. 320, 446 A.2d 174 (App.Div. 1982), the court excepted from a judgment for foreclosure a portion of the mortgage land based on a clause in the mortgage entitling the mortgagor to a release. A corporation had purchased land from plaintiff for residential development, made a downpayment in cash and executed a mortgage for the balance of the purchase price. The principals of the corporation proceeded *495 to transfer the property to the defendant partnership, which was owned by the principal, and dissolved the corporation. Defendant was unsuccessful in developing the property and defaulted in its mortgage payments. In the foreclosure action the trial judge exempted property that defendant sought to release from the mortgage based on a clause in the mortgage entitling the mortgagor to a release. The Appellate Division reversed and held that a subsequent grantee should not be permitted to have recourse to the release provision in the mortgage. Id. at 323, 446 A.2d 174. Although Romano may be distinguished from the case here, we think the court's reasoning is applicable to this case. In Romano, the court looked to the context and purpose of the release clause and found that in the context of the proposed construction of a residential development, it was contemplated that the consideration for the release clause would be continued development and payment of the mortgage loan. The court found that where the mortgagor ceased construction of units and made it impossible for the mortgagee to obtain mortgage payments as it contemplated, it would be unfair to compel the mortgagee to comply with the release clause to a grantee. The court stated:
The record here shows, as the trial judge found, that the covenant was intended to permit the mortgagor-developer to release from the lien of the mortgage portions of the tract that were subdivided and readied for sale. That development never eventuated; yet, at the same time the principals of WTA [corporation] had effectively deprived plaintiffs of any recourse on the bond by transferring the entire tract to themselves as partners and dissolving the mortgagor corporation. Thus, upon the aborting of the development plans and after default on the mortgage and the commencement of the foreclosure action, plaintiffs found themselves faced with an "election" by those same principals, now in partnership, to release what is conceded to be the best part of the tract, leaving plaintiffs with both their security impaired and without recourse under the bond for any deficiency. We find that the covenant cannot fairly be read to authorize its exercise by Associates under these circumstances.
[Id. at 323, 446 A.2d 174.]
We think that same reasoning is equally applicable here. Although unlike in Romano, we are not concerned with a subsequent grantee, there is the similarity of a non-recourse obligation. If defendants are permitted to release the land requested, plaintiffs have little or no land to turn to in seeking to recover their loan. *496 Under the circumstances of this case, we are persuaded that it would be unfair and inequitable to permit defendants to obtain the releases requested. We agree with the view expressed by Judge Bachman that:
To start with I have one side who has not breached and another side who has. I mean that may be an oversimplification but that is the true fact here and who has not breached is going to be damaged and he who has breached is going to walk away with a certain amount of the property free and clear. That just doesn't make any sense to me.
Affirmed.