695 A.2d 279

EDWARD SIMONSON AND SIMONSON FAMILY ASSOCIATES, L.P., PLAINTIFFS–APPELLANTS, v. Z CRANBURY ASSOCIATES, A LIMITED PARTNERSHIP, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 29, 1996—Decided February 14, 1996.

See also 1997 WL 307686.

———

Before Judges PETRELLA, SKILLMAN and EICHEN.

*William D. Grand* argued the cause for appellants (*Greenbaum, Rowe, Smith, Ravin & Davis*, attorneys; *Mr. Grand* and *Gary K. Wolinetz*, on the briefs).

*Avrom J. Gold* argued the cause for respondent (*Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg*, attorneys; *Mr. Gold*, of counsel, and on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

Appellants Edward Simonson and Simonson Family Associates, L.P. (Simonson) appeal from a final judgment granted to respondent Z Cranbury Associates (Z Cranbury) following an admeasurement hearing that had been ordered upon the entry of a prior judgment of foreclosure. Simonson objects to the trial judge's enforcement of a release provision inserted into a non-recourse, purchase money mortgage given by Z Cranbury to Simonson as partial payment for an approximately 249–acre tract.

Between 1982 and 1988, Z Cranbury paid Simonson a total of $180,000 for six annual options to purchase property located in Cranbury, New Jersey.[1] Notwithstanding its failure to persuade local zoning officials to reduce a six-acre lot size requirement for residential homes, Z Cranbury exercised its sixth option and purchased the Simonson tract for $6,723,891 on June 24, 1989.

Pursuant to a provision of a 1985 extended option agreement, Simonson gave Z Cranbury a credit against the purchase price for its prior option payments. At closing, Z Cranbury paid the remainder of 10% of the purchase price (approximately $490,000) in cash and financed the balance through a $6,051,502 promissory note secured by a ten-year purchase money mortgage in favor of Simonson. Paragraph Six of the note stated that

> this Note is non-recourse to the undersigned [ (Z Cranbury) ] and in the event of a default on this Note or the Mortgage, the sole remedy of Holder [ (Simonson) ] is limited to foreclosure upon the property subject to the lien of the Mortgage for satisfaction and no deficiency or other personal action will be instituted against the Undersigned.

Following a one-year extension of the effective date of its repayment obligation, Z Cranbury defaulted on its promissory note. Simonson[2] filed a complaint in foreclosure in November

---

[1] Respondent was represented during the negotiations by its developer principal, Lawrence Zirinsky, who is now deceased.

[2] The original complaint was filed by Edward and Raymond Simonson. Raymond Simonson then transferred his interest in the Z Cranbury mortgage to

1990, to which Z Cranbury asserted by counterclaim its right to obtain the unconditional release of 20.4 acres from the mortgage. In support of its claim, Z Cranbury cited Paragraph Three of a rider to the mortgage, which provided in pertinent part:

A. Releases from the lien of this Mortgage shall be obtained for the number of acres of property for which a release from the lien of this Mortgage is sought upon payment of a sum equal to the product of the following formula:

(Number of acres sought to be released) × (1.25) × ($27,000/acre)

*Notwithstanding the foregoing, at any time upon Borrower's request, from and after the date hereof Borrower shall be entitled to the release from the lien of this Mortgage of 20.4 acres without payment of release consideration,[3] and in addition* at any time on Borrower's request and without payment of additional release consideration, such acreage as Borrower shall require for construction of access roads and installation of utilities and such other easements as may be deemed necessary by the Borrower for development of the Property. There shall be credited against the release consideration to be paid hereunder all amounts paid in reduction of the principal amount of the Note which this Mortgage secures.

\*       \*       \*       \*       \*       \*       \*       \*

C. All acreage to be released shall be contiguous and shall contain a reasonable proportion of roadway frontage, open space and 'green belt' areas....

\*       \*       \*       \*       \*       \*       \*       \*

*D. No portion of the mortgaged premises shall be released from the lien of this Mortgage unless it is legally transferable as an entity separate from the remainder of the mortgaged premises in accordance with a legally effective subdivision or approved development plan.* [ (Emphasis supplied) ].

Prior to trial, both parties moved for summary judgment. Simonson argued that Z Cranbury could not release property from the 1988 mortgage because it had not satisfied the condition precedent of obtaining a municipal-approved subdivision or devel-

---

Simonson Family Associates, L.P, which was later substituted as a plaintiff in this litigation.

[3] The extended option agreement specifically provided that Z Cranbury would be entitled to a release of acreage from the mortgage lien based upon the cash payment made at closing. According to Daniel Murphy, a Simonson advisor and author of a release provision in the 1985 extended option agreement, the parties derived the 20.4–acre provision in the mortgage rider by calculating Z Cranbury's entitlement to acreage based upon its payment of $670,000 in cash at closing.

opment plan.[4]  Simonson alternatively asserted that Z Cranbury's material breach of its loan obligation had excused its duty of performance under the release provision.  In any event, Simonson contended that the parties had not intended that the mortgagor could enforce the release provision while in default because the mortgagee's sole remedy for default was foreclosure.

In granting summary judgment of foreclosure to Simonson, the motion judge accepted Z Cranbury's argument that it had paid $700,000 in option payments for its unconditional right to have 20.4 acres released from the mortgage.  Although he acknowledged that Z Cranbury was entitled to enforce the release provision, the motion judge concluded that apportionment of Z Cranbury's interest was not practical and set the matter down for a hearing to admeasure the value of the 20.4 acres.

Simonson then moved for reconsideration in light of *Goldman South Brunswick Partners v. Stern,* 265 *N.J.Super.* 489, 627 *A.*2d 1160 (App.Div.1993).  In *Goldman,* we held that a defaulting mortgagor should not be permitted to inflict further harm on a non-defaulting mortgagee through the release of property securing the parties' mortgage agreement.  Noting that he had been the trial judge in *Goldman,* the judge denied the motion, stating that the equities in the cases were distinguishable.

Due to the motion judge's retirement, another judge conducted the admeasurement trial.  Z Cranbury Vice President Harold Fishkin testified, over objection,[5] that Zirinsky had included the release provision in connection with the purchase agreements to ensure a recovery of land equal in value to the developer's investment risk even assuming that no zoning change would occur.  Simonson adviser Daniel Murphy, who testified he authored the

---

[4] As of the date of its counterclaim, Z Cranbury had filed a subdivision application regarding the property at issue.  The application was apparently mooted by the later entry of a judgment of foreclosure in favor of Simonson.

[5] The testimony was ruled admissible under *N.J.R.E.* 804(b)(6) and that ruling has not been briefed on appeal.

release provision of the 1985 option extension agreement, confirmed that the release provision resulted from the fact that the parties had not identified the particular parcel to which Z Cranbury was entitled for its 10% cash payment.

The Chancery Judge held that Z Cranbury was entitled to the value of 20.4 acres of the Simonson tract because its right of release had accrued prior to the default of its mortgage obligations. The judge reasoned that the parties would have expressly conditioned enforcement of the release provision upon an approved subdivision had they so intended. Although he refused to grant to Z Cranbury the particular parcel that it sought, the judge deemed a fair value of its interest to be three times the value of an appraised single, six-acre lot, or $480,000. After crediting Simonson with certain undisputed charges, judgment was entered in favor of Z Cranbury for $463,521.77.

In *Goldman South Brunswick Partners v. Stern, supra* (265 *N.J.Super.* 489, 627 *A.*2d 1160), we considered the enforceability of a release provision by developers who had defaulted on their mortgage obligations. The developers there had financed a land purchase through a cash downpayment and a purchase money mortgage on the property as security for two multi-million dollar promissory notes. A mortgage rider provided that the mortgagor could demand the release of property in consideration of its downpayment. The prior motion judge refused to enforce the release provision, holding that the developers had forfeited their right to obtain a release once they had defaulted under the mortgage. We affirmed based upon the principle that the mortgagee's duty to release property from the mortgage lien was premised on the absence of any material failure of the mortgagor's obligations. *See id.* at 494, 627 *A.*2d 1160. Our treatment of the mortgage in *Goldman* as an executory contract reflected the intent of the parties in that case. The mortgage negotiated by the parties had "clearly contemplated" that proceeds from the sale of developed lots from the property were to be applied to reduce the mortgage balance. *See ibid.*

■ In contrast, the mortgage considered by the Chancery Judge here constituted the bargained for exchange between Simonson and Z Cranbury. The judge observed that Z Cranbury had breached its duty of performance in 1990, two years after title closed. At the closing, the parties had agreed to incorporate a rider to the mortgage that established that Z Cranbury "shall be entitled to the release from the lien of this Mortgage of 20.4 acres *without payment of release consideration.... "* (Emphasis supplied). There was substantial credible evidence in the record to support the judge's conclusion that Z Cranbury had acquired an enforceable right under the release provision prior to its default of its mortgage obligations. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974).

■ Simonson alternatively argues that the trial judge erred in enforcing the release provision because the judge rejected its contention that Z Cranbury had failed to satisfy the condition precedent of subdivision approval. The judge rejected that argument, questioning whether Z Cranbury would have agreed to pay for nothing more than a conditional right.

Any construction given to the agreement of the parties must do justice, respect common sense, and enforce the intention of the parties. *See Krosnowski v. Krosnowski,* 22 *N.J.* 376, 126 *A.*2d 182 (1956); *see also Borough of West Caldwell v. Borough of Caldwell,* 26 *N.J.* 9, 24, 138 *A.*2d 402 (1958).

The record supports the judge's determination that Paragraph 3(A) of the agreement evidences the parties' intention that Z Cranbury acquired the right to obtain the release at any time of 20.4 acres from the lien of the mortgage given to Simonson. The record supports the judge's conclusion that conditioning that right would have defeated the probable intention of the parties that Z Cranbury should recover property equal to its initial investment. If the parties had intended otherwise, then they could have expressly applied Paragraph 3(D) to the 20.4 acres for which Z Cranbury had bargained. Our duty is to enforce the contractual terms as the parties have written them, not to make a better

contract than the parties have made for themselves. *See Kampf v. Franklin Life Ins. Co.*, 33 *N.J.* 36, 43, 161 *A.*2d 717 (1960). There is no warrant for our intervention.

Affirmed.