**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1100-18T4

LABORATORY CORPORATION
OF AMERICA d/b/a LABCORP,

    Plaintiff-Respondent,

v.

FUSION DIAGNOSTICS
LABORATORIES, LLC t/a
FUSION DIAGNOSTIC
LABORATORIES LIMITED
LIABILITY COMPANY, also
t/a FUSION DIAGNOSTICS
LAB,

    Defendant-Appellant.

_____

Submitted January 6, 2020 – Decided January 30, 2020

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1952-15.

Robert A. Skoblar, attorney for appellant.

Scarinci & Hollenbeck, LLC, attorneys for respondent (Joel N. Kreizman, on the brief).

PER CURIAM

Defendant Fusion Diagnostic Laboratories (Fusion) appeals from: (1) an order granting summary judgment dismissing counts III through X of its counterclaims; (2) a judgment entered in favor of plaintiff Laboratory Corporation of America (LabCorp) for $135,226.32 (including pre-judgment interest) following a non-jury trial; and (3) an order denying its post-judgment motion for reconsideration or a new trial. We affirm.

I.

In February 2013, Moataz Abdalla and Dr. Amir Ahmed partnered to acquire the indebted, year-old Fusion lab from its prior owner/members. Fusion analyzed blood samples, depended on physician referrals, and billed the patient's insurance company. The insurer then issued an explanation of benefits to indicate what portion of Fusion's invoice was covered.

In 2014, Abdalla and Dr. Ahmed built an account base, updated their technology, and trained qualified staff. Fusion's customer-base growth, however, soon overtook the lab equipment's capacity to analyze samples. To serve clients even when it was unable to perform the work, Fusion began referring tests to a third-party laboratory. Fusion then provided the report from the outside laboratory to the referring physician.

A-1100-18T4

Against this backdrop, LabCorp and Fusion entered into an oral agreement in March 2014. According to Fusion, it would send LabCorp samples for testing which Fusion did not have the capacity to do in-house. In exchange, LabCorp would charge Fusion seventy percent less than its book price. In addition, Fusion's phlebotomists at its referring physicians' offices would draw blood from those patients who utilized insurances known as New Jersey Family Care and Horizon New Jersey Health. According to Fusion, it agreed to this arrangement "because LabCorp had agreements with those private insurance companies that the members of those HMOs would only be covered for laboratory work if they used LabCorp's services." Fusion claimed it did not know then but found out months later was that LabCorp had "capitation agreements"[1] with those insurers. Fusion alleged that under this arrangement, LabCorp would save the expense of the phlebotomist, Fusion would service the physician account, LabCorp would pick up the samples and furnish reports to Fusion within twenty-four to forty-eight hours, and LabCorp would utilize a

---

[1] Under the capitation agreements, LabCorp was paid an advance lump sum by the health maintenance organization (HMO) irrespective of the number of tests LabCorp performed. The insured was required to use LabCorp for the testing to receive coverage.

A-1100-18T4

third-party billing account and bill the insurance carriers directly. These transactions are known in the industry as "full send outs."

Fusion alleged LabCorp breached the agreement in three ways: (1) LabCorp billed Fusion at its full book price without applying the seventy percent discount as promised for those referrals where Fusion did not have the capacity to perform the testing; (2) LabCorp did not utilize the already established third-party billing account for the "full send outs" and instead billed Fusion directly for those patients that utilized New Jersey Family Care and Horizon New Jersey Health; and (3) LabCorp repeatedly provided analysis for routine reports well after the twenty-four to forty-eight hour industry accepted time standard, injuring Fusion's reputation on its physician accounts.

Fusion's contractual relationship with LabCorp spanned from March 2014 until July 15, 2014. According to Fusion, the relationship soured and ended because LabCorp refused to honor its pricing agreement, continued to bill Fusion for the full send outs, and repeatedly failed to provide reports within twenty-four to twenty-eight hours. Fusion claims it immediately, and continuously, objected to the overcharges when it was first invoiced by LabCorp. Accordingly, Fusion refused to remit any payment for the perceived overcharges.

In response, LabCorp closed the account and claimed Fusion owed it a balance of $112,381.40. Fusion claims that amount was seventy percent greater than agreed upon and included $23,146.77 for the full send outs, which were unbillable because it could not directly bill the insurers. Fusion also alleged LabCorp failed to provide timely reports within twenty-four to twenty-eight hours resulting in lost business accounts.

As a result of Fusion's refusal to pay for services rendered, LabCorp filed a five-count complaint sounding in breach of contract, book account, quantum meruit, unjust enrichment, and an account stated. Plaintiff sought $136,736.67 in damages. Fusion filed an answer and ten-count counterclaim that alleged breach of contract (counts I and II), violation of the New Jersey Consumer Fraud Act (CFA) (count III), common law fraud (count IV), unfair competition (count V), intentional interference with contractual relations (count VI), intentional interference with prospective economic relations (count VII), negligent interference with prospective economic relations (count VIII), fraudulent concealment (count IX), and restraint of trade (count X). Notably, in its answer to the first count of the complaint Fusion stated, "The total owed by the defendant to plaintiff, not including offsets to which the defendant is otherwise entitled, is $33,714.42."

On October 20, 2016, LabCorp moved for partial summary judgment to dismiss Fusion's counterclaims other than the two breach of contract counts. The motion was granted on May 12, 2017.

A two-day bench trial began on April 18, 2018. That day, plaintiff reduced its claim by approximately $16,700. Over the course of trial, Tawanda Blackwell and James Henriques testified for plaintiff, including a rebuttal; Moataz Abdalla testified for defendant.

Blackwell testified she was a collection supervisor at LabCorp and was responsible for accounts receivable. She "confirmed that the account had a [seventy] percent across-the-board discount for discountable testing and noted on the bills where the discount was reflected." Blackwell also acknowledged two initial, erroneous invoices showed Fusion owed LabCorp $135,736.67, when the outstanding amount was actually $118,942.63 after the discounts were applied. She explained Fusion had two accounts with LabCorp: a third-party billing account billed to Horizon, an HMO, and a direct client account billed to Fusion. The trial court determined her testimony was credible and non-evasive.

Henriques testified he was a key hospital services representative for LabCorp, which required him to solve reporting issues, special pricing, equipment, and supplies relative to hospital and clinical facility accounts. He

6

took control of the Fusion accounts in March 2014, but was not involved in the initial meeting, which was handled by a former LabCorp employee named Chip Murphy. Henriques' main contact with Fusion was Dr. Walter Shonkwiler. The two reached an agreement to make Fusion a hospital key account, which allowed for a seventy percent discount on all discountable testing, and Henriques further agreed to make special requests for pricing on specific tests when Fusion desired.

According to Henriques, there were no discussions regarding delayed reporting; the discussions with Dr. Shonkwiler were limited to pricing. He also testified, and objective evidence showed, Fusion received special pricing on at least two occasions. Henriques explained LabCorp was required to provide insurance and other processing information to receive payments from third parties. He claimed Fusion frequently failed to provide that information. He also testified, however, that the services were always completed even without the proper billing information. Ultimately, LabCorp wrote off the third-party billing account receivable because Dr. Shonkwiler never provided the proper information.

The court found Henriques' testimony was credible and supported by the objective evidence presented during trial, which the court reviewed extensively.

A-1100-18T4

The court noted Fusion failed to submit any of its own records to disprove the information contained in the LabCorp reports.

The court concluded the "vast majority of the delay issues were problems caused by Fusion's method drawing samples or adding verbal tests that required written authorizations from Fusion to complete." Furthermore, the court accepted Henriques' testimony that he never guaranteed a turnaround time for testing. The evidence also showed that, "[o]ver the four-month period that Fusion sent samples to LabCorp for testing, LabCorp accepted over a thousand orders" for which Fusion did not remit payment. Plaintiff rested after Henriques' testimony.

Abdalla testified Fusion could not charge for testing billed to Horizon due to an exclusivity agreement between Horizon and LabCorp for testing. Therefore, Fusion entered into an agreement with LabCorp so Fusion could market its services to doctors who accepted Horizon. Abdalla testified LabCorp's March 2014 reports indicated LabCorp did not receive samples or that tests were missing or ordered improperly. He described the relationship as Fusion existing at LabCorp's mercy.

The court noted most of Abdalla's testimony was unsupported by objective evidence and the testimony that did relate to objective evidence was plagued by

8

errors. For example, Abdalla testified Fusion's profit margin was usually thirty percent, but that claim was belied by the tax returns Fusion provided the court. The court further noted Abdalla's claims of lost business and profits were unsupported by any evidence, objective or testimonial; to the contrary, the evidence indicated Fusion continually increased its gross and net income each year from 2014 to the date of trial. In addition, Abdalla admitted he did not know the exact amount sent for testing over the term of the business relationship.

The court concluded LabCorp established, by a preponderance of the evidence, that Fusion entered into an agreement with LabCorp for blood testing and failed to remit payment for services rendered. Accordingly, the court found LabCorp proved its breach of contract claim against Fusion and awarded $118,942.63, plus interest, in damages. The court found Fusion met its burden of proof with regard to showing it entered an agreement with LabCorp but failed to prove causation as to the perceived delays in receiving test results or as to lost clients. Therefore, the court dismissed Fusion's counterclaim for breach of contract (counts I and II) with prejudice.

Fusion moved for reconsideration or a new trial. The judge issued an August 31, 2018 order and six-page written statement of reasons denying the motion. The judge first noted that Fusion was essentially rearguing its case.

The judge then engaged in a detailed analysis of the trial testimony and exhibits. The court noted:

> Henriques denied that any of the third-party billing was included in the invoices from LabCorp. Based on the testimony, as well as the invoicing, spreadsheets and reports entered into evidence at trial, the [c]ourt concluded that Mr. Henriques' testimony denying that any of the third-party billing was included in the invoices from LabCorp was credible.

As to exhibit LC265, the court stated:

> Henriques testified that this form and the information contained therein was provided by Fusion. He further explained that he reviewed [all] of these forms to confirm that none of the third-party billing tests were billed to Fusion.

As to Abdalla's testimony, the court noted Abdalla "admitted to errors in his testimony during trial." Although Abdalla claimed that a "$22,969.47 invoice should have been $9,165.15, the records did not correspond with that assertion." As an example, the court explained mistake in Fusion's position as to the billing for Vitamin B12 testing. Based on the discrepancies between Fusion's allegations and the credible evidence, the court found that Abdalla, who was Fusion's only witness, was not credible. The court concluded that " Fusion's disagreement with [the] [c]ourt's findings and credibility determinations does no warrant either reconsideration or a new trial."

10

Fusion's also argued that LabCorp establish a prima facie case for breach of contract or accounts stated because it did not establish that tests were to be discounted or the price Fusion agreed to pay for the testing and because LabCorp's invoices were wrong. The court rejected these claims, concluding the invoices and Blackwell's testimony "establish[ed] the prices, discounts and ultimately, the damages in the case." The court then emphasized that "it is undisputed that Fusion never paid money for services provided to it by LabCorp."

This appeal followed. Fusion raises the following points:

POINT ONE
LABCORP DID NOT MAKE OUT A PRIMA FACIE CASE FOR BREACH OF CONTRACT BECAUSE IT DID NOT ESTABLISH WHAT TESTS WERE AGREED TO BE DISCOUNTED OR WHAT PRICE FUSION AGREED TO PAY FOR THE TESTING.

POINT TWO
DESPITE THE TESTIMONY OF LABCORP'S WITNESSES AT THE TRIAL TO THE CONTRARY, FUSION WAS BILLED DIRECTLY FOR THE FULL SEND OUTS IN THE SUM OF $22,001.79.

POINT THREE
LABCORP DID NOT MAKE OUT A CLAIM FOR AN ACCOUNT STATED BECAUSE ITS INVOICES WERE ADMITTEDLY WRONG AND NEVER CORRECTED TO DATE AND FUSION HAS CONTINUOUSLY OBJECTED TO THE FEES THAT WERE CHARGED.

11

POINT FOUR
THE LOWER COURT SHOULD NOT HAVE
DISMISSED MANY OF FUSION'S
COUNTERCLAIMS BY SUMMARY JUDGMENT
BECAUSE MATERIAL QUESTIONS OF FACT
EXISTED AS TO WHETHER LABCORP WAS
INVOLVED IN BAIT AND SWITCH REGARDING
ITS PRICING; AND WHETHER OR NOT LABCORP
WAS PERPETRATING A FRAUD BY BILLING
FUSION WHERE IT HAD EXCLUSIVITY OR
CAPITATION AGREEMENTS WITH INSURERS.

II.

We first address the grant of partial summary judgment dismissing counts III through X of Fusion's counterclaim. Fusion claims there were material facts at issue precluding summary judgment. We are unpersuaded by this argument.

Summary judgment should be granted if the court determines "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On appeal, the Appellate Division "review[s] the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo

12

Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)).

The trial court determined that Count III, the consumer fraud claim, could not proceed because Fusion did not qualify as a consumer under the CFA. Fusion, a commercial firm, agreed to pay for services that were not available directly to the general public. Accordingly, Fusion is not a "consumer" within the meaning of the CFA. See Papergraphics Int'l, Inc. v. Correa, 389 N.J. Super. 8, 12-13 (App. Div. 2006) (interpreting "consumer" as defined in the CFA).

Count IV, the common law fraud claim, required dismissal because Fusion did not allege any facts to support that claim beyond those alleged to support their breach of contract claim. See Bracco Diagnostics, Inc. v. Bergen Brunswick Drug Co., 226 F. Supp. 2d 557, 563 (D.N.J. 2002) (noting fraud and breach of contract claims may only coexist when the fraud relates to pre-contractual inducement). The economic loss doctrine prohibits a party from recovering in tort economic losses arising out of the breach of a contract. Dean v. Barrett Homes, Inc., 204 N.J. 286, 296 (2010).

Counts V through VIII were dismissed because there was "insufficient evidence on the record for the [c]ourt to determine whether LabCorp" orally agreed "to provide timely lab reports or diagnostic testing referred by Fusion."

A-1100-18T4

The trial court also concluded that any "consequential damages resulting from LabCorp's failure to abide by the terms of an oral agreement to provide timely reports and accept samples in good faith [were] more properly addressed under a theory for breach of contract," rather than through tortious interference, citing Dean, 204 N.J. at 296.

Count IX, the fraudulent concealment claim, focused on Fusion's lack of awareness that LabCorp had capitation agreements with certain HMOs. It was dismissed because there was "no evidence on the record that indicates LabCorp was engaged in fraudulent behavior by agreeing to set up a third[-]party account and insuring Fusion it would be reimbursed by patients' HMO[s]." Accordingly, it was immaterial to Fusion and LabCorp's agreement that LabCorp was in capitation agreements with certain HMOs. Therefore, LabCorp was never under a duty to disclose the existence of the capitation agreements.

Count X, which alleged restraint of trade, asserted LabCorp, in concert with Quest Diagnostics, violated antitrust laws by cornering the market. It was dismissed because there was no evidence that LabCorp and non-party Quest Diagnostics, conspired, or contracted to control the market. During oral argument before the trial court, Fusion "conceded that there was no expert testimony or any other support for the restraint of trade claim." Additionally,

Fusion did not define the market being controlled by LabCorp or Quest Diagnostics. The trial court further noted Fusion's continuing relationship with another laboratory "belies Fusion's claim that the market is injured through LabCorp and Quest's alleged exclusive control."

The court's determinations were supported by the motion record and reflected appropriate application of the relevant legal principles. We discern no basis to disturb the grant of partial summary judgment dismissing counts III through X of Fusion's counterclaim.

## III.

We next address the trial decision. Our scope of review of a judgment following a bench trial is limited. Final determinations of a trial court "premised on the testimony of witnesses and written evidence at a bench trial" are deferentially reviewed. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citing N.J. Tpk. Auth. v. Sisselman, 106 N.J. Super. 358 (App. Div. 1969)). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent,

15

relevant and reasonably credible evidence as to offend the interests of justice[.]" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (second alteration in original) (quoting In re Tr. Created By Agreement Dated Dec. 20, 1961 ex rel. Johnson, 194 N.J. 276, 284 (2008)).  We also defer to a trial judge's credibility determinations.  In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997).

"To establish a breach of contract claim, plaintiffs must prove:  the parties entered into a contract, containing certain terms; plaintiffs performed what was required under the contract; defendant did not fulfill its obligation under the contract; and defendant's breach caused a loss to plaintiffs."  Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 188 (App. Div. 2017) (citing Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)).

If a party commits a "breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement."  Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)).  "[A] breach is material if it 'goes to the essence of the contract.'"  Ibid. (quoting Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961)). After a material breach occurs, "the non-breaching party may treat the contract as terminated and refuse to render continued performance."  Goldman

S. Brunswick Partners v. Stern, 265 N.J. Super. 489, 494 (App. Div. 1993) (quoting Ross, 35 N.J. at 341).

The trial court determined Fusion breached the oral agreement and LabCorp did not. Fusion acknowledged it did not pay for services rendered by LabCorp, and the evidence adduced at trial supported that fact. Failing to pay for services rendered operated as a material breach of the agreement. Fusion's assertion that mispricing or delays, even if substantiated, would permit them to completely forego their obligation to pay for services rendered lacks merit.

More fundamentally, as the trial court emphasized in its decision, Fusion failed to present any objective evidence in support of its claims. Rather, Fusion relied on inferences and testimonial evidence from one witness who was found not credible. As the court noted, Abdalla contradicted himself and appeared confused at multiple points in his testimony.

The record amply supports the trial court's findings of fact and conclusion that LabCorp sustained its burden of proof while Fusion did not. The evidence further supports the damages awarded to LabCorp. We decline to disturb those findings and conclusions.

IV.

Lastly, we consider the denial of Fusion's motion for reconsideration. Motions for reconsideration are governed by Rule 4:49-2. "The decision to deny a motion for reconsideration falls 'within the sound discretion of the [trial court], to be exercised in the interest of justice.'" In re Belleville Educ. Ass'n, 455 N.J. Super. 387, 405 (App. Div. 2018) (alteration in original) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)). Reconsideration should be employed only "for those cases which fall into that narrow corridor in which either the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings, 295 N.J. Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). "Reconsideration cannot be used to expand the record and reargue a motion. Reconsideration is only to point out 'the matters or controlling decisions which [a party] believes the court has overlooked or as to which it has erred.'" Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting R. 4:49-2).

We review a trial court's decision to grant or deny a motion for reconsideration for abuse of discretion. Cummings, 295 N.J. Super. at 389. An abuse of discretion occurs "when a decision is 'made without a rational

explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Measured against these standards, we are convinced Fusion's arguments are without sufficient merit to warrant discussion in a written opinion, Rule 2:11-3(e)(1)(E), and affirm substantially for the reasons set forth in the trial court's statement of reasons. We add the following comment.

As correctly determined by the motion court, Fusion failed to demonstrate that the court's decision rested on a palpably incorrect or irrational basis, or that the court failed to consider or appreciate the significance of competent evidence. Cummings, 295 N.J. Super. at 384. Thus, reconsideration was properly denied.

To the extent we have not addressed Fusion's remaining arguments it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1100-18T4